## MARYLAND *v.* SOPER, JUDGE. (No. 1)

### PETITION FOR A WRIT OF MANDAMUS.

No. 23, Original. Argued December 7, 1925.—Decided February 1, 1926.

1. The remedy of mandamus is grantable by this Court, in its sound discretion, on petition of a State to determine the legality of a removal of a criminal case from a state to a federal court, under Jud. Code § 33. P. 28.
2. The propriety of the writ in such cases results from the exceptional character of the proceeding sought to be reviewed and the absence of any other provision for reviewing it; it does not depend on lack of jurisdiction or abuse of discretion in the District Court. *Id.*
3. Section 33 of the Judicial Code, which authorizes removal to the District Court of any criminal prosecution commenced in any court of a State against "any officer appointed under or acting under or by authority of any revenue law of the United States,

or against any person acting under or by authority of any such officer, on account of any act done under color of his office or of any such law, . . . ", applies to prohibition agents (and their chauffeur) engaged in a quest for an illicit still, under commissions from the Commissioner of Internal Revenue empowering them to enforce the prohibition acts and internal revenue acts relating to manufacture, sale, taxation, etc., of intoxicating liquors. So *held* in view of § 5 of the Act of November 23, 1921, (amending the Prohibition Act,) which kept in force earlier laws and penalties regarding manufacture, etc., of intoxicating liquors; of Rev. Stats. § 3282, forbidding and punishing unauthorized distilling, etc.; and of § 28, Title II, of the Prohibition Act, extending to officers enforcing that Act the "protection" conferred by law for the enforcement of then existing laws relating to the manufacture, etc., of intoxicating liquors. P. 30.

4. In authorizing removal of a prosecution commenced "on account of" any act done by the defendant, under color of his office, etc., § 33 of the Judicial Code, *supra,* does not mean that the very act charged, e. g., a homicide, must have been done by him; it is enough if the prosecution is based on, or arises out of, acts which he did, or his presence at the place, under authority of federal law, in the discharge of his official duty. P. 32.

5. In his petition to remove a prosecution, under § 33, *supra,* the defendant must set forth all the circumstances known to him out of which the prosecution arose, candidly, specifically and positively explaining his relation to the matter and showing that it was confined to his acts as such officer. P. 34.

6. The petition must aptly plead the case upon which the defendant relies so that the court may be fully advised and the State may take issue by a motion to remand. *Id.*

7. A removal petition setting forth acts done by the petitioners in performance of their duty as prohibition officers and alleging that their indictment in a state court is a criminal prosecution on account of acts alleged to have been done by them at a time when they were engaged in the performance of their duties as such officers as so set forth, is insufficient. P. 35.

Mandamus awarded.

Petition by the State of Maryland for a writ of mandamus directing the United States District Judge of the District of Maryland to remand to the proper state court an indictment for murder, which had been removed

to the District Court under the provisions of § 33 of the Judicial Code. See also the next two cases.

*Messrs. Thos. H. Robinson,* Attorney General of Maryland, and *Herbert Levy,* Assistant Attorney General of Maryland, for petitioner.

Mandamus lies from this Court to compel a federal district court to remand a criminal prosecution to the state court where it is apparent from the record that the federal court has no jurisdiction whatever of the case.

It has been broadly asserted that the inferior federal tribunals have the power to decide whether or not they have jurisdiction to try a civil cause properly brought before them, and that such decisions are not open to collateral attack. *Ex parte Hoard,* 105 U. S. 578; *Re Pollitz,* 206 U. S. 323; *Ex parte Nebraska,* 209 U. S. 436; *Ex parte Gruetter,* 217 U. S. 586; *Re Harding,* 219 U. S. 363; *Ex parte Roe,* 234 U. S. 70; *Ex parte Park Square Automobile Station,* 244 U. S. 412; *Ex parte Riddle,* 255 U. S. 450. In the *Harding Case,* all of the cases upon the subject were discussed, and the Court announced this general rule, for civil cases. In doing so, it disapproved and qualified the following: *Ex parte Wisner,* 203 U. S. 449; *Re Moore,* 209 U. S. 490; *Re Winn,* 213 U. S. 458.

In the *Harding Case* an exception to the general rule was recognized as to the power of this Court to utilize the writ of mandamus to remand a criminal prosecution " which, if wrong was committed, no power otherwise to redress than by mandamus existed." This exception has been recognized also in *Virginia* v. *Rives,* 100 U. S. 313; *Virginia* v. *Paul,* 148 U. S. 107; *Kentucky* v. *Powers,* 201 U. S. 1.

Petitioner has no remedy by appeal from the order of the District Court of the United States refusing to remand the case to the state court, for it is well established that such a review can be had only after final judgment.

*McLish* v. *Roff,* 141 U. S. 661. Should the final judgment be an acquittal, in whole or in part, the State could not have a writ of error to review it. *United States* v. *Sanges,* 144 U. S. 310. Unless this Court entertains the petition for mandamus, the State is without any redress.

Removal acts are strictly construed. *Blake* v. *McKim,* 103 U. S. 336; *Sewing Mach. Co's. Case,* 18 Wall. 553. No case is subject to removal, which is not by its facts brought completely within the defined class.

Section 33 of the Judicial Code was passed in consequence of an attempt by one of the States to make penal the collection by United States officers of duties under the tariff laws. *Tennessee* v. *Davis,* 100 U. S. 257; *People's United States Bank* v. *Goodwin,* 152 Fed. 937. Its purpose is to protect the federal officers in the discharge of their official duties, and those who are employed to act under them; but, further than providing this necessary protection to the administration of its revenues, the federal Government is not interested. The statute must be interpreted with reference to its manifest spirit and general purpose, and a word or phrase should not be extended beyond its proper relation to give jurisdiction. *Johnson* v. *Wells Fargo & Co.,* 98 Fed. 3; *Virginia* v. *De-Hart,* 119 Fed. 626.

The jurisdiction of the federal court under removal acts depends upon the statements made in the petition for removal, verified by the oath of the petitioner. *Virginia* v. *Paul,* 148 U. S. 107; *Salem & L. R. Co.* v. *Boston & L. R. Co.,* 21 Fed. 228.

Federal prohibition agents acting under the National Prohibition Law are not revenue officers and that law is not a revenue law. *Lipke* v. *Lederer,* 259 U. S. 557. Whether officers enforcing the prohibition law are entitled to remove prosecutions against them in state courts, under § 33 of the Judicial Code, has never been passed upon by this Court. The decisions of the lower federal

courts are not in accord.   *Oregon* v. *Wood,* 268 Fed. 975;
*Morse* v. *Higgins,* 273 Fed. 830; *Smith* v. *Gillian,* 282
Fed. 628; *Commonwealth* v. *Bogan,* 285 Fed. 668; *United
States* v. *Commonwealth of Pennsylvania,* 293 Fed. 931;
*Wolkin* v. *Gibney,* 3 Fed. (2d) 960.   Section 28, Title II,
of the National Prohibition Act, does not enlarge the
scope of § 33 of the Judicial Code, so as to confer the
right of removal upon federal prohibition agents.   *Smith*
v. *Gillian, supra.*

The facts, as set out in the amended petition, make it
abundantly clear that the duties which these petitioners
were alleged to have been performing at the time of the
happenings which form the basis of the indictment were
being performed in their capacity as federal prohibition
officers and not as general revenue officers enforcing
" other revenue statutes."

The following facts are pertinent: The petitioners deny
they brought about the death of Wenger, or had any
knowledge of. who was responsible therefor, or how he,
Wenger, came to his death.   It is nowhere alleged that
the deceased was engaged in the violation of the National
Prohibition Law or any other revenue law at the time
of his decease; or that the agents suspected Wenger of
any such violation; or that Wenger was connected in any
way with any investigation in which the agents allege
they were engaged; or that the homicide was the result of
any act upon the part of the agents to protect themselves
or each other in the discharge of any duty they were per-
forming.   The facts alleged do not show what act done by
them under color of their office or any revenue law can
be said to have resulted in the prosecution—not the in-
vestigation they were conducting; nor any act of self-
protection or for the protection of each other; nor any act
in attempting to apprehend the supposed violators of the
National Prohibition Law; nor any act in returning to
Baltimore to report their investigation; nor any act in

attempting to obtain medical attention for the deceased. If the prosecution was not on account of any act done under color of their office or under color of any revenue law, then it should not have been removed, because it obviously did not arise on account of any right, title or authority claimed by them under any revenue law, and was not commenced against any person holding property or estate by title derived from any revenue officer, and did not affect the validity of any revenue law—the other two classes of prosecutions to which the statute is applicable.

To permit of removal, the prosecution must have arisen out of an act done under the color of their office or under the color of a revenue law, unless the statute is construed to mean that the right of removal is accorded to every officer of the kind merely by virtue of his office, irrespective of the nature of his act or of the circumstances under which it was committed. Certainly a mere denial of guilt does not create a presumption that the acts charged were done under color of his office.

It may be asserted that the construction contended for by the State would require revenue officers to admit their guilt or to establish their legal justification for the act done as a condition precedent to the exercise of their right of removal. That this argument is fallacious is apparent from a comparison of § 33 of the Judicial Code with Revised Statutes, § 753. The latter provides that the federal courts shall have the power to release by *habeas corpus,* persons " in custody for an act done or omitted in pursuance of a law of the United States." To warrant the exercise of this jurisdiction, this Court has held that it must be established: (1) That, under the circumstances disclosed, the petitioner for *habeas corpus* was acting in pursuance of the law of the United States and within the scope of his authority as a federal officer; (2) that his confinement will injure and seriously affect the authority and operations of the National Govern-

ment; and (3) that the case was one of extreme urgency where the federal court having heard the facts believes that a proper exercise of the discretion vested in it demands the discharge of the prisoner. *Drury* v. *Lewis,* 200 U. S. 1. See also: *Pales* v. *Paoli,* 5 Fed. (2d) 280; *United States* v. *Weeden,* 24 Fed. Cas. 738; *In re Marsh,* 51 Fed. 277; *Castle* v. *Lewis,* 254 Fed. 917; *Cunningham* v. *Neagle,* 135 U. S. 1. It follows that under Rev. Stats. § 753, petitioner must establish, *inter alia,* his innocence of the crime charged as a condition of his release. The distinction between the two provisions of the law lies in the words "*under color* of his office or of any such law." The phrase, "under color" implies that, for removal, the officer must establish *prima facie,* that is to say, he must set up in his petition, such facts as show affirmatively that the act upon which the prosecution is grounded was done in the probable pursuance of his duties or was within the apparent scope of his authority. When he seeks his release by *habeas corpus* he must go further; he must show that the act was actually within the scope of his authority. A review of the cases arising under § 33 of the Judicial Code shows that, in every instance where the removal was granted, some specific act under color of his office or under color of a revenue law, was set forth, either expressly or impliedly, in the petition for removal. There was a statement of the act done by the officer, resulting in his prosecution, which showed *prima facie* that the act was done under color of his office. *Tennessee* v. *Davis,* 100 U. S. 257; *Davis* v. *South Carolina,* 107 U. S. 597; *Illinois* v. *Fletcher,* 22 Fed. 776; *Salem & L. R. Co.* v. *Boston & L. R. Co.,* 21 Fed. Cas. 228.

A just interpretation does not authorize a writ of certiorari upon a statement of the mere opinion of the petitioner and his counsel that the act was done under color of the office of an agent under the revenue laws of the United States. Facts, not mere opinions or conclusions of

law, should be set forth, so that it may appear whether in judgment of law such a case exists as enables the petitioner to call for removal. *Virginia* v. *Dehart,* 119 Fed. 626; *Virginia* v. *Felts,* 133 Fed. 85; *People's U. S. Bank* v. *Goodwin,* 162 Fed. 937. *Alabama* v. *Peak,* 252 Fed. 306 is unsound. *Oregon* v. *Wood,* 268 Fed. 975; *Smith* v. *Gillian,* 282 Fed. 628; *Commonwealth of Massachusetts* v. *Bogan,* 285 Fed. 668.

The removal statute applies only where the act which is the basis of the action or prosecution has some rational connection with official duties under a "revenue law," and in some way affects the revenue of the Government. In this case, the amended petition, which sets forth in detail the facts upon which the petitioners rely, does not meet the jurisdictional requirements for the removal of the prosecution, even though this Court may be of the opinion that in a proper case the removal acts are applicable to officers such as those described in the petition.

*Assistant to the Attorney General Donovan,* with whom *Solicitor General Mitchell* was on the brief, for respondent.

The five defendants stand on an equal footing, so far as removal is concerned. *Davis* v. *South Carolina,* 107 U. S. 597. They are within the statutory terms: "officers acting by authority of any revenue law of the United States," or "persons acting under or by authority of any such officer." · Their commissions empowered them to enforce not merely the National Prohibition Act but also the internal revenue laws which dealt with intoxicating liquor. Sections of the Revised Statutes which deal with the subject of illicit distilling are still presumably in force, having been revived by § 5 of the Act of November 23, 1921, c. 134, 42 Stat. 222. *United States* v. *Stafoff,* 260 U. S. 477. And their provisions were clearly applicable to the circumstances disclosed by this case. The defendants searching for an illicit still were not acting to enforce the

National Prohibition Act alone, but equally to enforce the provisions of the older revenue laws. *United States* v. *Page*, 277 Fed. 459. Their power to make searches and seizures was derived not only from the National Prohibition Act but also from Rev. Stats. 3166, 3276, 3278, and 3332. Cf. *Steele* v. *United States* (*No. 2*), 267 U. S. 505.

The National Prohibition Act may or may not itself be a "revenue law" (*Lipke* v. *Lederer*, 259, U. S. 557); and government officers relying on its provisions alone may or may not be "revenue officers" in the strictest technical sense. There are provisions in the Prohibition Act clearly designed for the raising of revenue. The older provisions of the Revised Statutes, at any rate, are revenue measures under which taxes may still be imposed. Congress may tax liquors, even though their production is forbidden. *United States* v. *Yuginovich*, 256 U. S. 450. By the amendatory Act of 1921, (Nov. 23, 1921, c. 134, 42 Stat. 222) Congress has clearly manifested its intention to do so. *United States* v. *Stafoff*, 260 U. S. 477. A commission as a "revenue officer" is not a necessary requirement for removal of a prosecution. *Davis* v. *South Carolina*, 107 U. S. 597; *United States* v. *Page*, 277 Fed. 459. Even if they are not themselves "revenue officers," the Commissioner of Internal Revenue is such an officer; and the defendants were clearly "persons acting under or by authority of" the Commissioner. Prosecutions against prohibition agents are properly removable, as well as prosecutions against "revenue officers".

The "protection" extended to prohibition agents by § 28 includes the right to seek removal of prosecutions from the state courts. *United States* v. *Pennsylvania*, 293 Fed. 931; *Massachusetts* v. *Bogan*, 285 Fed. 668; *Morse* v. *Higgins*, 273 Fed. 830; *Oregon* v. *Wood*, 268 Fed. 975. *Smith* v. *Gillian*, 282 Fed. 628, and *Wolkin* v. *Gibney*, 3 Fed. (2d) 960, *contra.* Protection implies the

right to conduct one's defense in a court where that defense can most properly be made. *Massachusetts* v. *Bogan,* 285 Fed. 668.

The removal provisions of § 33 of the Judicial Code are the lineal descendants of § 3 of the Force Act of 1833, directed against Nullification in South Carolina. Act of March 2, 1883, c. 57, 4 Stat. 632. See the President's message on that occasion. Richardson's Messages and Papers of the Presidents, vol. II, p. 610; Debates in Congress, vol. 9, part 1, p. 329. The removal provisions were designed as a measure of protection to the agents of the United States. *Davis* v. *South Carolina,* 107 U. S. 597; *Tennessee* v. *Davis,* 100 U. S. 257; *The Mayor* v. *Cooper,* 6 Wall. 247; *Massachusetts* v. *Bogan,* 285 Fed. 668; *In re Duane,* 261 Fed. 242; *Peyton* v. *Bliss,* Fed. Cas. No. 11055; *Findley* v. *Satterfield,* Fed. Cas. No. 4792; *State* v. *Hoskins,* 77 N. Car. 530.

The prosecution was removable nothwithstanding the fact that the defendants did not admit that they had any part in the killing. In so far as *Illinois* v. *Fletcher,* 22 Fed. 776, holds otherwise, it has twice been disapproved in subsequent decisions. *Alabama* v. *Peak,* 252 Fed. 306; *Oregon* v. *Wood,* 268 Fed. 975. The petition need only set forth that at the time of the alleged crime the officer was acting under color of his office or under authority of the law; and it must allege that the prosecution is for acts alleged to have been done in the performance of his duty. It is not necessary for him to disclose before trial his complete defense to the indictment, nor to adduce full evidence showing justification of his official acts. It is enough, in the words of the statute, to show that the prosecution arises on account of any act done under color of his office or of any such law. The phrase " color of office " covers a claim which may later turn out to be groundless, as well as a claim which full investigation shows to have been well founded. Indeed, the former

meaning is probably the more usual one. Bouvier, L. D., s. v. " Color of Office "; *Virginia v. De Hart,* 119 Fed. 626; *Griffiths* v. *Hardenbergh,* 41 N. Y. 464; *Wilson* v. *Fowler,* 88 Md. 601; *McCain* v. *Des Moines,* 174 U. S. 168. The statute requires only a fair showing that the officer was acting at the time in the probable course of his duty. *Tennessee* v. *Davis,* 100 U. S. 257.

The decision of the District Court granting the petition for removal, and denying the motion to remand, was an exercise of lawful judicial discretion, and can not be controlled by mandamus. *United States* v. *Lawrence, Judge,* 3 Dall. 42; *Ex parte Bradstreet,* 8 Pet. 588. Cf. *Ex parte Taylor,* 14 How. 2; *Ex parte Secombe,* 19 How. 9; *Ex parte Newman,* 14 Wall. 152; *Ex parte Cutting,* 94 U. S. 14; High, Extraordinary Legal Remedies (3d. ed.), § 149; *In re Rice,* 155 U. S. 396; *Ex parte Roe,* 234 U. S. 70; *Ex parte Slater,* 246 U. S. 128; *Ex parte Chicago, Rock Island and Pacific Railway,* 255 U. S. 273; *Ex parte Hoard,* 105 U. S. 578; *Ex parte Harding,* 219 U. S. 363.

An exception may perhaps be recognized with respect to the removal of criminal causes. And in three cases this Court has granted mandamus to compel the remand of criminal cases wrongfully removed from the state courts. *Virginia* v. *Rives,* 100 U. S. 313; *Virginia* v. *Paul,* 148 U. S. 107; *Kentucky* v. *Powers,* 201 U. S. 1. In each of these cases the petition for removal upon its face clearly showed that no grounds for removal existed. The record in each case demonstrated the lack of jurisdiction of the federal court. On the other hand, where the jurisdiction of the lower court is doubtful, the remedy by mandamus will be refused. *Ex parte Muir,* 254 U. S. 522.

In *Virginia* v. *Rives,* 100 U. S. 313, this Court held that the protection afforded by Rev. Stats. § 641 extended only to cases where there had been a denial of equal rights by the law of the State. Denial of equal rights by the wrongful practice of state officials, (unauthorized by law,)

furnished no ground for removal. The petition of the accused negroes, therefore, on its face failed to disclose any possible ground for removal, and the Circuit Court had no possible ground for assuming jurisdiction. *Kentucky* v. *Powers*, 139 Fed. 452 was very similar.

In *Virginia* v. *Paul*, 148 U. S. 107, is the only case where this Court has granted mandamus to remand a prosecution against a federal officer. It went upon the ground that no prosecution had been " commenced " at the time removal was sought. A prosecution for murder in Virginia was held to be " commenced," only by the finding of an indictment, and not by the issuance of a warrant of arrest. Until the indictment is found, there is no " prosecution " to remove. The Circuit Court was therefore without any jurisdiction to order removal upon the petition filed in that case. Not one of those decisions turned upon the sufficiency of allegations as to the official capacity of the accused, or as to the fact that the indictment was for a crime committed in the course of his duty.

In the case at bar it is submitted that the District Court had ample facts before it upon which to base its assumption of jurisdiction. Upon the amended petition for removal and the motion by the State to quash and remand, the court was called upon to decide mixed questions of law and fact. It is submitted that the decision of the District Court was final. *Tennessee* v. *Davis*, 100 U. S. 257; *Virginia* v. *Felts*, 133 Fed. 85; *Virginia* v. *De Hart*, 119 Fed. 626. If jurisdiction is clear, or even if jurisdiction is doubtful, mandamus will not lie. *In re Cooper*, 143 U. S. 472; *Ex parte Muir*, 254 U. S. 522.

MR. CHIEF JUSTICE TAFT delivered the opinion of the Court.

This is a petition by the State of Maryland for a writ of mandamus against Morris A. Soper, the United States District Judge for Maryland, directing him to remand an indictment for murder, found in the Circuit Court for

·Harford County, Maryland, against four prohibition agents and their chauffeur, which was removed to the United States District Court under § 33 of the Judicial Code, as amended August 23, 1916, 39 Stat. 532, c. 399. The text of the amended section in so far as it is material here is set out in the margin.*

The indictment, found February 10, 1925, charged as follows:

" The jurors of the State of Maryland, for the body of Harford County, do on their oath present that Wilton L. Stevens, John M. Barton, Robert D. Ford, E. Franklin Ely, and William Trabing, late of Harford County aforesaid, on the nineteenth day of November, in the year of our Lord nineteen hundred and twenty-four, at the County aforesaid, feloniously, wilfully, and of their deliberately premeditated malice aforethought did kill and murder Lawrence Wenger; contrary to the form of the Act of Assembly· in such case made and provided; and against the peace, government, and dignity of the State."

---

* " Sec. 33. That when any civil suit or criminal prosecution is commenced·in any court of a State against any officer appointed ·under or acting by authority of any revenue law of the United States now or hereafter enacted, or against any person acting under or by authority of any such officer, on account of any act done under color of his office or of .any.such law, or on account of any right, title, or authority claimed by such officer or other person under any such law, or is commenced against any person holding property or estate by title derived from any such officer and affects the validity of any such revenue law, or against any officer of the courts of the United States for or on account of any act done under color of his office or in the performance of his duties as such officer, or when any civil suit or criminal prosecution is commenced against any person for or · on account of anything done by him while an officer of either House of Congress in the discharge of his official duty in executing any order of such House, the said suit or prosecution may at any time before the trial or final hearing thereof be removed for trial into the district court next to be holden in the district where the same is pending upon the petition of such defendant to said district court and in the following manner."

The defendants were arrested, and on February 11, 1925, filed a petition in the United States District Court for the District of Maryland, in which they averred that they were Federal prohibition . agents, except Trabing, who was their chauffeur, and was assisting them and was acting under the authority of the Prohibition Director, and that the act or acts done by Trabing, as chauffeur and helper, as well as by the other defendants, at the time when they were alleged to have been guilty of the murder of Lawrence Wenger, which charge they all denied, were done in the discharge of their official duties as prohibition agents, and as officers of the internal revenue in the discharge of their duty. Thereupon an order of removal, together with a writ of certiorari, and *habeas corpus cum causa,* pursuant to § 33, was made by Judge Soper of the District Court. On March 12th, the State of Maryland, by its Attorney General and the State's Attorney for Harford County, appeared specially and made a motion to quash the writ and rescind the order. On the 17th of May, the cause came on for hearing on the motion to quash, and the defendants having applied for leave of court to amend the petition, it was granted, and an amended petition was filed. After setting out the indictment, the third, fourth, and fifth paragraphs of the amended petition were as follows:

" 3. That the acts alleged to have been done by the petitioner William Trabing are alleged to have been done at a time when he was engaged in the discharge of his duties while acting under and by authority of Federal Prohibition Director Edmund Budnitz and Federal Prohibition Officers Robert D. Ford, John M. Barton, Wilton L. Stevens and E. Franklin Ely, as aforesaid, while the said officers were engaged in the discharge of their official duties as prohibition officers in making and attempting to make an investigation concerning a violation

of the National Prohibition Act and other Internal Revenue Laws and while reporting and preparing to report the results of said investigation and in protecting himself and the said officers of the Internal Revenue in the discharge of his and their duty as set out in Paragraph 4 below.

" 4. That the acts alleged to have been done by the petitioners Robert D. Ford, John M. Barton, Wilton L. Stevens, and E. Franklin Ely, are alleged to have been done at a time when they were engaged in the discharge of their official duties as Federal Prohibition Officers, and in making and attempting to make an investigation concerning a violation of the National Prohibition Act and other Internal Revenue Laws, and in reporting the results of said investigation, and in protecting themselves in the discharge of their duty as follows:

" That on November nineteenth, nineteen hundred and twenty-four, your petitioners were directed by Maryland Federal Prohibition Director Edmund Budnitz to investigate the alleged unlawful distillation of intoxicating liquor on a farm known as the Harry Carver farm situated approximately three miles from the village of Madonna, about twelve miles northwest from Bel Air, Maryland, which said property was then unoccupied. Your petitioners reached the said farm premises shortly after midday on November nineteenth, nineteen hundred and twenty-four, and discovered there in a secluded wooded valley and swamp materials for an illicit distilling operation, to wit, nine empty mash boxes, three fifty-gallon metal drums, a fifty-gallon condenser, about one thousand pounds of rye meal in bags, a lighted fire, and men's working clothes. Your petitioners thereupon concealed themselves in woods and shrubbery nearby the still site and shortly thereafter became aware of the approach of a number of men bringing with them a still. Your petitioners thereupon made their presence known to the men who were approaching, and the men immediately dropped

the still and fled; and though your petitioners pursued
them across the fields, no one of the fleeing men was over-
taken or arrested. Thereupon your petitioners returned
to the still site, destroyed the materials before mentioned
which constituted the unlawful distilling plant, and
started to return to their car which had been left some
distance from the still site, for the purpose of returning
to Baltimore to report to the office of the Maryland Fed-
eral Prohibition Director concerning the results of their
investigation, when they discovered a man, whom they
afterwards learned to be one Lawrence Wenger, mortally
wounded and lying beside the path along which they
were walking, some 400 or 500 yards from the still site
and in a direction opposite to that from which the un-
known men had approached and towards which they fled.
Whereupon your petitioners carried the wounded man to
their car and took him to Jarrettsville, Maryland, for
medical treatment, but finding none there available, pro-
ceeded with all speed to Bel Air, where they sought out
in turn Doctors Richardson, Sappington and Archer, with-
out success, and finally placed the said Lawrence Wenger
in charge of Doctor Van Bibber, who pronounced him
dead. Your petitioners then, acting under the advice of
the said Doctor Van Bibber, removed the body of the
said Lawrence Wenger to the undertaking establishment
of Dean and Foster in Bel Air. Your petitioners then
proceeded to the State's Attorney's office in Bel Air and
related the facts aforesaid to the State's Attorney; where-
upon, on being informed by them that your petitioners
Robert D. Ford, John M. Barton, Wilton L. Stevens, and
E. Franklin Ely were prohibition officers and that your
petitioner William Trabing was employed by the Federal
Prohibition Director as their chauffeur, they were placed
under arrest by the sheriff of Harford County at the in-
stance of the State's Attorney and were confined in the
Harford County jail until the following morning, Novem-

ber twentieth, nineteen hundred and twenty-four. On the morning of November twentieth, nineteen hundred and twenty-four, your petitioners were taken by the Sheriff and State's Attorney, in company with a number of men who that afternoon served upon the coroner's jury mentioned in the indictment, and in company with two Baltimore city police headquarters detectives, to the scene of their investigation of the previous day. They related the facts concerning their investigation of the unlawful distilling operation and their finding of the said Lawrence Wenger on November nineteenth, and then and there went over the scene of the said occurrences, relating freely and without reservation the events which took place November nineteenth, in accordance with their duty as investigating and reporting officers of the Federal Government and in compliance with their duties as Federal Prohibition Officers. Likewise on the afternoon of November twentieth your petitioners were called before the coroner's inquest heretofore described in the indictment, and freely and without reservation in accordance with their duty as investigating and reporting officers of the Federal Government and acting under the direction of the Maryland Federal Prohibition Director, related the facts aforementioned. And thereupon they were again placed in the Harford County jail and held for action of the Harford County Grand Jury until their release on bail upon the evening of November twentieth, nineteen hundred and twenty-four, at the instance of the United States Attorney for the District of Maryland acting on their behalf.

" 5. That the said criminal prosecution was commenced in the manner following:

"A presentment against your petitioners was returned in the Circuit Court for Harford County, February ninth, nineteen hundred and twenty-five, following which presentment the State of Maryland, by the State's Attorney

for Harford County, prosecuted and sued forth out of the Circuit Court for Harford County a writ of the State of Maryland of *Capias Ad Respondendum* against your petitioners, to which there was no return by the Sheriff of Harford County, whereupon the indictment heretofore set forth was returned.

" The said indictment is now pending in the Circuit Court for Harford County and is a criminal prosecution on account of acts alleged to have been done by your petitioners at a time when they were engaged in the performance of their duties as Federal Prohibition Officers and chauffeur for Federal Prohibition Officers as set forth in the aforegoing paragraphs.

"*Wherefore,* your petitioners pray that the said suit may be removed from the Circuit Court for Harford County, aforesaid, to this Honorable Court, and that writs of certiorari and habeas corpus *cum causa* may issue for that purpose pursuant to the statute of the United States in such case made and provided. (U. S. Compiled Statutes, Sec. 1015, being Judicial Code, Sec. 33, as amended Act August 23, 1916, c. 399; Prohibition Act, Title II, Section 23.)"

A motion to quash the amended petition, April 11, 1925, was based on the ground, among others, that the allegations of the amended petition did not disclose a state of facts entitling the defendants to have the writ issue, or to have the charge against them removed. On May 5, 1925, Judge Soper denied the motion to quash, and directed that the order of court removing the indictment be ratified and confirmed. On the same day, the following stipulation was entered into by the parties:

" It is stipulated by and between the parties hereto that Robert D. Ford, John M. Barton, Wilton L. Stevens and E. Franklin Ely, during the month of November, in the year 1924, and prior to said time, and at the time of the matters and facts charged in the indictment in the

Circuit Court for Harford County, were Federal Prohibition Officers, holding a commission under the Commissioner of Internal Revenue, and countersigned by the Federal Prohibition Commissioner, in the form following, that is to say:

' This certifies that....................is hereby, employed as a Federal Prohibition Officer to act under the authority of and to enforce the National Prohibition Act and Acts supplemental thereto and all Internal Revenue Laws, relating to the manufacture, sale, transportation, control, and taxation of intoxicating liquors, and he is hereby authorized to execute and perform all the duties delegated to such officers by law.'

"And that William Trabing was, at the time of the acts alleged in the indictment in the Circuit Court for Harford County, a chauffeur of the Reliable Transfer Company, engaged and employed by Edmund Budnitz, Federal Prohibition Director of the State of Maryland, in the capacity of chauffeur for the Prohibition Agents above named."

The State of Maryland applied to this Court for leave to file its petition for mandamus, in which it set forth fully the facts as above stated, including, as exhibits, the petition for removal, the amended petition for removal, its motion to quash, the stipulation, and the orders of the District Court. This Court, granting leave, issued a rule against Judge Soper to show cause why the writ of mandamus should not issue in accordance with the prayer of the State.

Judge Soper, in his answer to the rule, recited the facts of the record as already given, said that the District Court was of opinion that the petitioners were entitled to removal under § 33 of the Code as revenue officers, or, if not as revenue officers, as agents of the Commissioner by virtue of § 28 of the National Prohibition Act; that a prosecution had been commenced against the

petitioners on account of acts done under color of their office and of the revenue and prohibition laws of the United States, notwithstanding that the petitioners did not admit having caused the death of Wenger, and that it had adjudged that it possessed ample jurisdiction to order the removal and to try the case; and he therefore asked that the rule be discharged and that the petition of the State be dismissed.

It is objected on behalf of the respondent that this is not a proper case for mandamus; that whether the facts averred in the amended petition come within the requirement of § 33 of the Judicial Code is a question within the regular judicial function of the District Court to decide, and that this Court should not interfere thus prematurely with its exercise.

*Virginia* v. *Rives*, 100 U. S. 313, *Virginia* v. *Paul*, 148 U. S. 107, and *Kentucky* v. *Powers*, 201 U. S. 1, were cases in which criminal prosecutions by a State, removed to a federal court under asserted compliance with federal statutes, were ordered remanded by writ of mandamus. The Attorney General of Maryland relies on them to show that the writ may issue to test the legality of the removal in all criminal cases. On behalf of the United States, it is pointed out that these cases differ from the one before us, in that in the former the State prosecution had not reached a stage for removal, or was not of a character in which, under the language of the statute, removal could be had at all, and so the federal court was wholly without jurisdiction. The writ in those cases was justified by the Court because of the gross abuse of discretion of the lower court, its clear lack of jurisdiction, and the absence of any other remedy. *Ex parte Harding*, 219 U. S. 363, at p. 373. In this case, the facts averred show the prosecution to be of the class and character in which removal is permitted by § 33, and there is no lack of jurisdiction or abuse of discretion; and the only issue made is on the interpreta-

tion of the facts and the application of the section, an issue clearly within the judicial jurisdiction of a district court.

Mandamus is an extraordinary remedy which is issued by this Court under Rev. Stats., § 688 to courts of the United States in the exercise of its appellate jurisdiction, and in civil cases does not lie to compel a reversal of a decision, either interlocutory or final, made in the exercise of a lawful jurisdiction, especially where in regular course the decision may be reviewed upon a writ of error or appeal. *Ex parte Roe,* 234 U. S. 70, 73; *Ex parte Tiffany,* 252 U. S. 32, 37; *Ex parte Park Square Automobile Station,* 244 U. S. 412; *Ex parte Slater,* 246 U. S. 128, 134; *Ex parte Oklahoma,* 220 U. S. 191, 209; *Ex parte Harding,* 219 U. S. 363; *Ex parte Nebraska,* 209 U. S. 436; *Ex parte Hoard,* 105 U. S. 578.

It may be conceded that there are substantial differences between *Virginia* v. *Paul, Virginia* v. *Rives,* and *Kentucky* v. *Powers,* and this case. But we do not think that those differences should prevent the issue of the mandamus here. In respect of the removal of state prosecutions, there should be a more liberal use of mandamus than in removal of civil cases. We exercise a sound judicial discretion in granting or withholding the writ. It may be " in cases warranted by the principles and usages of law." Rev. Stats., § 688; *Ex parte Bradley,* 7 Wall. 364, 376; *Virginia* v. *Rives, supra,* at p. 323, separate opinion of Mr. Justice Field, *ibid.* at p. 329. It is granted in analogy to the intervention of equity to secure justice in the absence of any other adequate remedy. *Duncan Townsite Co.* v. *Lane,* 245 U. S. 308, 312. In the case before us and in all state prosecutions removed under § 33, the jurisdiction of the courts of a State to try offenses against its own laws and in violation of its own peace and dignity is wrested from it by the order of an inferior federal court. The State by its petition for man-

damus becomes a suitor at the bar of this Court to challenge the legality of the inferior court's action. Conceding the validity of the exceptional use of the national supremacy in a proper case, it seeks by this writ to test its propriety here. Except by the issue of mandamus, it is without an opportunity to invoke the decision of this Court upon the issue it would raise. The order of the United States District Judge refusing to remand is not open to review on a writ of error, and a judgment of acquittal in that court is final. *United States* v. *Sanges,* 144 U. S. 310; *Virginia* v. *Paul, supra,* at p. 122. The fact that the United States District Court may be proceeding in the exercise of a lawful jurisdiction should not, under such exceptional circumstances, prevent this Court from extending to the State the extraordinary remedy.

We come then to the sufficiency of the amended petition for removal under § 33 of the Judicial Code to justify the District Court in denying the motion to remand.

The first objection made by the State to the removal is that prohibition agents can not have the benefit of § 33, because they are not officers " appointed under or acting by authority of any revenue law of the United States," as provided in the section. Four of the defendants are admitted to have been acting under commissions issued by the Commissioner of Internal Revenue, " empowering them to enforce the National Prohibition Acts and Acts supplemental thereto, and all Internal Revenue Laws, relating to the manufacture, sale, transportation, control, and taxation of intoxicating liquors." The fifth defendant, Trabing, it is admitted, was acting as a chauffeur and helper to the four officers under their orders and by direction of the Prohibition Director for the State. It is not denied on behalf of the State that he has the same right to the benefit of § 33 as they. *Davis* v. *South Carolina,* 107 U. S. 597.

The Act of November 23, 1921, 42 Stat. 223, c. 134, § 5, known as the Willis-Campbell law, amending the National Prohibition Act, 41 Stat. 307, c. 85, provides that,

"All laws in regard to the manufacture and taxation of a traffic in intoxicating liquor and all penalties for violations of such law, that were in force when the National Prohibition Act was enacted, shall be and continue in force as to both beverage and non-beverage liquor, except such provisions of such laws as are directly in conflict with any provision of the National Prohibition Act or of this Act."

Rev. Stats., § 3282, forbidding fermenting of mash or wort, or the making of spirits therefrom on premises other than a distillery authorized by law, and by a duly authorized distiller, and punishing its violation by fine and imprisonment, is not in conflict with anything in the Prohibition Act. The Willis-Campbell Act thus makes clear the criminality of such an act under the revenue laws. *United States* v. *Stafoff,* 260 U. S. 477. In searching for the still for the purpose of preventing the violation of law, the prohibition agents in this case were therefore acting under the authority of the revenue laws.

More than this, they were brought within the application of § 33 by the provision of § 28, Title II, of the National Prohibition Act, providing that the commissioner, his assistants, agents, and inspectors, and all other officers of the United States whose duty it is to enforce criminal laws, shall have all the power and *protection* in the enforcement of the Act, or any provisions thereof, which is conferred by law for the enforcement of existing laws relating to the manufacture or sale of intoxicating liquor under the law of the United States. We have no doubt that the word "protection" was inserted for the purpose of giving to officers and persons acting under authority of the National Prohibition Act in enforcement of its provisions, the same protection of a trial in a federal

court of state prosecutions as is accorded to revenue
officers under § 33.

Section 33 was derived from § 643 of the Revised Stat-
utes, which in turn was derived from the Act of July 13,
1866, 14 Stat. 171, c. 184, § 37, and the Act of June 13,
1864, 13 Stat. 241, c. 173, § 50. These acts extend the
Act of March 2, 1833, 4 Stat. 633, c. 57, § 3, applying to
officers engaged in collection of customs duties, to those
engaged in the collection of internal revenue. *People's
United States Bank* v. *Goodwin,* 162 Fed. 937, 939; *Ten-
nessee* v. *Davis,* 100 U. S. 257, 267. The Act of 1833 was
enacted in the days of attempted nullification of national
customs revenue laws in South Carolina and was during
the Civil War extended to those charged with collecting
the internal revenue. Congress not without reason as-
sumed that the enforcement of the National Prohibition
Act was likely to encounter in some quarters a lack of
sympathy and even obstruction, and sought by making
§ 33 applicable to defeat the use of local courts to em-
barrass those who must execute it. The constitutional
validity of the section rests on the right and power of
the United States to secure the efficient execution of its
laws and to prevent interference therewith, due to pos-
sible local prejudice, by state prosecutions instituted
against federal officers in enforcing such laws, by removal
of the prosecutions to a federal court to avoid the effect of
such prejudice. *Tennessee* v. *Davis, supra.*

Do the facts disclosed by the amended petition for
removal bring the defendants within § 33? The State
insists that they are insufficient because they do not
show that the defendants committed the act of homicide
upon which the indictment is founded. The case of *Illi-
nois* v. *Fletcher,* 22 Fed. 776, seems to hold that a reve-
nue officer can take advantage of the statute and secure
a trial in a federal court only by admitting that he did
the act for which he is prosecuted. We think this too

narrow a construction of the section. *Cleveland, Columbus, etc., Railroad* v. *McClung,* 119 U. S. 454, 461.

The prosecution to be removed under the section must have been instituted " on account of " acts done by the defendant as a federal officer under color of his office or of the revenue or prohibition law. There must be a causal connection between what the officer has done under asserted official authority and the state prosecution. It must appear that the prosecution of him, for whatever offense, has arisen out of the acts done by him under color of federal authority and in enforcement of federal law, and he must by direct averment exclude the possibility that it was based on acts or conduct of his not justified by his federal duty. But the statute does not require that the prosecution must be for the very acts which the officer admits to have been done by him under federal authority. It is enough that his acts or his presence at the place in performance of his official duty constitute the basis, though mistaken or false, of the state prosecution.

Suppose that the prosecution of the officer for murder was commenced merely on account of the presence of the officer, in discharge of his duties in enforcing the law, at or near the place of the killing, under circumstances casting suspicion of guilt on him. He may not even know who did the killing, and yet his being there and his official activities may have led to the indictment. He may certainly claim the protection of the statute on the ground that the prosecution was commenced against him " on account of " his doing his duty as an officer under color of such a law, without being able to allege that he committed the very act for which he is indicted. It is enough if the prosecution for murder is based on or arises out of the acts he did under authority of federal law in the discharge of his duty and only by reason thereof.

100569°—26——3

In invoking the protection of a trial of a state offense in a federal court under § 33, a federal officer abandons his right to refuse to testify because accused of crime, at least to the extent of disclosing in his application for removal all the circumstances known to him out of which the prosecution arose. The defense he is to make is that of his immunity from punishment by the State, because what he did was justified by his duty under the federal law, and because he did nothing else on which the prosecution could be based. He must establish fully and fairly this defense by the allegations of his petition for removal before the federal court can properly grant it. It is incumbent on him, conformably to the rules of good pleading, to make the case on which he relies, so that the court may be fully advised and the State may take issue by a motion to remand. *Chesapeake & Ohio Railway Company* v. *Cockrell,* 232 U. S. 146, 151, 152, and cases cited. See also concurring opinion of Mr. Justice Field in *Virginia* v. *Rives, supra,* at p. 332, and *Hanford* v. *Davies,* 163 U. S. 273, 279.

We think that the averments of the amended petition in this case are not sufficiently informing and specific to make a case for removal under § 33. We have set forth the account the defendants gave in their amended petition of what they saw and did, but the only averments important in directly connecting the prosecution with their acts are at the opening and close of their petition. They refer to the death of Wenger only by incorporating the indictment in the petition, and then say that " the acts [i. e. the killing of Wenger] alleged to have been done by petitioners Robert D. Ford, John M. Barton, Wilton L. Stevens and E. Franklin Ely, are alleged to have been at a time when they were engaged in the discharge of their official duties as Federal Prohibition Officers, and in making and attempting to make an investigation concerning a violation of the National Prohibition Act and other Internal

Revenue Laws and in reporting the results of said investigation, and in protecting themselves in the discharge of their duty." The amended petition closes with the statement that the indictment "is a criminal prosecution on account of acts alleged to have been done by your petitioners at a time when they were engaged in the performance of their duties as Federal Prohibition Officers and chauffeur for Federal Prohibition Officers as set forth in the foregoing paragraphs."

These averments amount to hardly more than to say that the homicide on account of which they are charged with murder was at a time when they were engaged in performing their official duties. They do not negative the possibility that they were doing other acts than official acts at the time and on this occasion, or make it clear and specific that whatever was done by them leading to the prosecution was done under color of their federal official duty. They do not allege what was the nature of Wenger's fatal wound, whether gunshot or otherwise, whether they had seen him among those who brought the still and fled, or whether they heard, or took part in any shooting. They do not say what they did, if anything, in pursuit of the fugitives. It is true that, in their narration of the facts, their nearness to the place of Wenger's killing and their effort to arrest the persons about to engage in alleged distilling are circumstances possibly suggesting the reason and occasion for the criminal charge and the prosecution against them. But they should do more than this in order to satisfy the statute. In order to justify so exceptional a procedure, the person seeking the benefit of it should be candid, specific and positive in explaining his relation to the transaction growing out of which he has been indicted, and in showing that his relation to it was confined to his acts as an officer. As the defendants in their statement have not clearly fulfilled this requirement, we must grant the writ of mandamus,

directing the District Judge to remand the indictment and prosecution. Should the District Judge deem it proper to allow another amendment to the petition for removal, by which the averments necessary to bring the case within § 33 are supplied, he will be at liberty to do so. Otherwise the prosecution is to be remanded as upon a peremptory writ.

