## HARRISON BEVERAGE CO., Inc., v. PENNINGTON, Federal Prohibition Administrator, et al.

### No. 4958.

Circuit Court of Appeals, Third Circuit.

Sept. 14, 1932.

Harry Grossman, of Elizabeth, N. J., for appellant.

Norman J. Morrison, of Washington, D. C., and J. Bertram Wegman, of Brooklyn, N. Y., for appellees.

Before DAVIS, Circuit Judge.

DAVIS, Circuit Judge.

This is a rule to show cause why the supersedeas allowed pending appeal from an order of the United States District Court in the above-stated cause should not be vacated.

On bill of complaint filed in the Court of Chancery of New Jersey on July 15, 1932, that court issued a rule to show cause containing an ad interim restraint enjoining the appellees from entering upon or remaining in plaintiff's brewery plant between the hours of 4 o'clock in the afternoon and 7 o'clock in the forenoon of the following day and from 12 o'clock noon on Saturday until 7 o'clock the following Monday morning, when the brewery was supposed to be shut down and not operated.

On the following day, July 16, 1932, petition was filed in the United States District Court for a writ of certiorari for the removal of the proceedings into that court. They were removed, and on motion heard on July 20, 1932, the District Court vacated that portion of the order of the Court of Chancery which restrained the appellees from entering into and remaining in the brewery premises between 4 o'clock in the afternoon and 7 o'clock in the forenoon and from Saturday noon until Monday morning, when the plant was to be shut down and not in operation. However, the Court of Chancery, after the proceedings were removed into the District Court, heard the cause on the day set for the return of its rule and made the restraint theretofore granted permanent.

An appeal was allowed from the order of the District Court and a supersedeas granted with the proviso that, if the brewery plant was operated between the hours of 4 o'clock in the afternoon and 7 o'clock in the forenoon of the succeeding day and from Saturday noon to Monday morning an application might be made to this court or to a judge to vacate the supersedeas.

A petition was filed on July 25, 1932, to vacate the supersedeas on the ground that the brewery had been operated in the prohibited period and on the further ground that the Court of Chancery was without power to enter the restraining order.

It is urged that the District Court was without jurisdiction to enter the order vacating portions of the order of the Court of Chancery for certain specified technical reasons. But I am inclined to dispose of the petition on the merits.

As to the first ground, the evidence does not establish that the plant was in operation as alleged. The plant has been surrounded by agents ever since the order of the Court of Chancery was entered, and the fact that no evidence was produced which, by any fair interpretation, indicated operation, justifies the conclusion that there is no such evidence and that the plant was not operated.

As to the second question, it is alleged that operations of the brewery are carried on only between the hours of 7 o'clock a. m. and 4 o'clock p. m.; that during the remaining hours of each day and from Saturday noon until 7 o'clock Monday morning the plant is closed and no operation whatever is carried on. During the hours when the plant is closed, the beverage company contends that it is not compelled to keep the plant open, admit prohibition agents, and provide a place where they can remain in the plant.

On the other hand, counsel for appellees say that the administrator has the right and power to station and maintain agents in the plant at all times, day or night, while it is closed, twenty-four hours during the day, although he has no knowledge of any violation of the National Prohibition Act, but is suspicious that the law might be violated.

The agents have not been prevented from remaining on the outside of the plant and literally surrounding it when it is closed.

The bill filed in the Court of Chancery alleges that the prohibition agents without cause, departing from their previous method of procedure, which they had pursued for a long time in making periodical inspections, adopted the policy, not of inspection, but of keeping the Harrison Beverage plant under constant surveillance, have entered upon the premises, and have continuously remained therein, day and night, twenty-four hours a day; that they interfere with the employees of the plant while engaged in lawful work of manufacturing the lawful product of cereal beverages and while supplying the manufactured product to customers; that "they refuse to permit the complainant's officers and employees to freely go through the plant but instead have blocked their paths and as each

and every employee attempts to perform his ordinary and lawful duty, insist on interrogating each and every officer and employee, refusing to permit them to continue with their ordinary duty unless explanations are given of the character and nature of the work which is about to be performed. They continuously go through the complainant's plant twenty-four hours each day and make pretended accusations which are untruthful, requiring each of the officers and employees to engage in constant explanations and conversation, thereby disrupting completely the normal activity and orderly and proper conduct of the complainant's business"; that, as a result of such conduct, interference, and embarrassment on the part of the prohibition agents, the complainant is losing a great deal of its legitimate business, and is "unable to properly and freely conduct its aforesaid business all as a result of which the complainant will suffer and continue to suffer irreparable damage"; that complainant has requested the prohibition agents "to desist and refrain from such unlawful interference with and trespassing upon complainant's premises and interference with complainant's lawful conduct of its business," but they have refused and continue to interfere with the lawful conduct of complainant's business.

As aforesaid, the Court of Chancery granted a temporary restraining order which, after the case was removed into this court by certiorari, upon final hearing it made permanent on the general ground, as I understand it, that the conduct of the agents was unauthorized by any law, state or federal, and so the agents were ordinary trespassers guilty of injuring the lawful business of the complainant which has no adequate remedy at law.

The complainant plants itself upon this proposition, says that it is sound, and therefore the supersedeas should not be vacated.

The soundness of this proposition depends upon the facts, and, in view of the fact that the interests of the government are protected under the provisions of the supersedeas, I am unwilling to set aside the order of the Court of Chancery, in this application, which has now heard the facts and reached a mature and considered judgment based thereon.

The complainant further says that the investigations necessary in, or incidental to, administrative action with respect to permits and the power to make seizures and arrests for violations discovered in the course of such investigations is confined to the Secretary of the Treasury and his agents, and does not extend to the Attorney General and the officers of the Bureau of Prohibition in the Department of Justice.

Section 4 (b) of the Prohibition Reorganization Act of 1930 (27 USCA § 104 (b) provides that: "The duty to make all investigations necessary in or incidental to administrative action with respect to permits and bonds given in connection therewith and the power to make seizures and arrests for violations discovered in the course of such investigations shall remain with the Secretary of the Treasury, but the Attorney General shall make such investigations as he deems necessary to prevent violations of, or for the purpose of enforcing the penal provisions of, this title or any other Act for the enforcement of the eighteenth amendment."

It was argued at the return of the rule to show cause and in the brief of the appellees that the prohibition agents had the right to remain in the brewery day and night by virtue of the provisions of the permit that "the Supervisor of Permits may, if he deems it necessary, at all times keep one or more officers within the plant." This argument shows that the prohibition agents, as they freely allege, were in the plant making investigations under authority given by the permit, for they admit that they had no knowledge of any crime or violation of the National Prohibition Act committed by the brewery. If they did have such knowledge, they should have secured a search warrant and entered the plant by virtue thereof. Taylor v. United States, 286 U. S. 1, 52 S. Ct. 466, 76 L. Ed. 951. Not having such knowledge and not acting as prohibition agents to enforce the criminal provisions of the National Prohibition Act (27 USCA § 1 et seq.), they, the admitted agents of the Bureau of Prohibition in the Department of Justice, were there under the authority of the permit to make inspections. This they had no right to do. That work is confined to the Secretary of the Treasury and his agents. This the appellees practically admit. They say: "The permit specifies neither kind of officers. It ill behooves appellants to say now that only officers of the Treasury Department can be maintained in his plant, since equity regards the substance and not the form." The case of Maryland v. Soper, 270 U. S. 9, 46 S. Ct. 185, 70 L. Ed. 449, has no application to the facts of this case.

Under these facts, I feel that I should not set aside the order of the Court of Chancery, but let that question be passed upon by the Circuit Court of Appeals. In any event, all

that the Bureau of Prohibition should desire, pending this appeal, is that the National Prohibition Act shall not be violated and the order allowing a supersedeas gives protection in this respect.

The petition is dismissed.