QUITMAN CONSOLIDATED SCHOOL DISTRICT By and Through its Superintendent, Dr. Charles W. SHEPHERD, Jr., and Its Board of Education, Steve Conner, Larry Howze, Lewis Jefferson, Mickey Long, and Walter Taylor, Plaintiffs,

v.

ENTERPRISE SCHOOL DISTRICT, By and Through Its Superintendent Kenneth W. POUNCEY, and Its Board of Education, Andrew Kersh, Linda Sisson, Michael Gunn, John McPhearson, and Billy Mosley, Defendants.

Civil Action No. 4:99CV60LN.

United States District Court,
S.D. Mississippi,
Eastern Division.

Aug. 5, 1999.

Robert H. Compton, Witherspoon & Compton, Meridian, MS, for plaintiffs.

Polly J. Covington, Robert E. Covington, Jr., Covington Law Office, Quitman, Shirley Payne, Dennis L. Horn, Horn & Payne, PLLC, Madison, MS, for Defendants.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the motion of plaintiff Quitman Consolidated School District, by and through its Superintendent, Dr. Charles W. Shepherd, Jr., and its Board of Education, Steve Conner, Larry Howze, Lewis Jefferson, Mickey Long and Walter Taylor, to remand this case to the Chancery Court of Clarke County, Mississippi, from which it was removed. Defendants Enterprise School District, by and through its Superintendent, Kenneth W. Pouncey, and its Board of Education, Andrew Kersh, Linda Sisson, Michael Gunn, John McPhearson and Billy Mosley, have responded in opposition to the motion and the court, having considered the parties' memoranda of authorities, together with attachments, concludes that the motion must be granted.

The parties' submissions reflect that in 1988, the Quitman Consolidated School District (Quitman District) established and began operating the Clarke County Vocational Technical Center (Center). At that time, students from the Quitman District began attending the Center. It appears that the Enterprise School District at that time elected not to send any of its students to the Center. It did, however, begin sending some of its students (about 35) to the Center in the 1997–98 school year pursuant to an agreement with the Quitman District, for a tuition fee of $465 per student per year. The following year, Enterprise students again enrolled at the Center (41 for the 1998–99 school year). Yet for that year, rather than billing the Enterprise District $465 per student, the Quitman District sought to have the Enterprise District pay $624 per student, which it claimed was Enterprise District's tuition

for its students based on a prorata assessment of overall expenses for maintaining the Center. The Enterprise District's refusal to pay this increased amount, based on its contention that it had agreed only to pay $465 per student, precipitated the Quitman District's filing a complaint for declaratory judgment in the Chancery Court of Clarke County on April 12, 1999, asking that the state court enter judgment for the Quitman District for the balance of tuition claimed to be owing by the Enterprise District for the 1998–99 school year. The Enterprise District removed the case, alleging jurisdiction of this court pursuant to its continuing jurisdiction under prior desegregation decrees respecting these school districts.[1] Thereafter, the Enterprise District filed its answer, denying therein that it owed additional tuition sums, and included with its answer a counterclaim in which it asserted that the two districts had entered into an agreement for interdistrict transfers of vocational education students to the Center for $465 per student, that the Quitman District has made the required payments and that its students ought therefore be allowed to complete their coursework without impediment from this litigation. It asserted further, that the establishment and operation of this "regional vocational education center" by these two school districts (the Quitman District and the Enterprise District), as authorized by state law and particularly Miss.Code Ann. § 37–31–71 *et seq.*,

> impacts upon students, faculty and staff, administration, funding, and transportation of the school districts, all of which are subject to the continuing desegregation decree issued by this Court.

It asks, then, that this court declare that the Vo–Tech Center located in Clarke County be operated as a regional vocational education center under applicable state law "to the extent that the operation of

such a regional center does not conflict with the desegregation decree," and to further declare that the operation of the Center as a "regional" vo-tech center "[is] consistent with the school desegregation decree previously entered by this Court."

The Quitman District has moved to remand, contending that neither its complaint nor the Enterprise District's counterclaim identifies a constitutional violation or any violation of the desegregation decree and thus fails to raise a cognizable federal question to support federal jurisdiction. In response to plaintiffs' motion, defendant Enterprise District insists that "school boards are entitled to removal of actions affecting desegregation orders under both 28 U.S.C. § 1441 and § 1443(2)," and that this case is "subject to this federal court's authority arising from its continuing jurisdiction to enforce school desegregation."

■ As a general rule, an action may be removed from state court to federal court only if a federal district court would have original jurisdiction over the claim in the case. *See* 28 U.S.C. § 1441(a). To remove a case on the basis of federal-question jurisdiction, the federal question usually must appear on the face of a properly pleaded complaint; an anticipated or actual federal defense ordinarily does not qualify a case for removal. *See Louisville & N.R. Co. v. Mottley*, 211 U.S. 149, 152, 29 S.Ct. 42, 53 L.Ed. 126 (1908). Though the Enterprise District submits that a federal question can arguably be found on the face of the Quitman District's state court complaint, it urges that such a finding is unnecessary to sustain its removal, since under § 1443(2), removal would be proper based on the Enterprise District's own pleadings.

---

1. The neighboring Enterprise District, Quitman District and Lauderdale County School District are all covered under desegregation orders entered in *United States v. Lauderdale County School District*, NO. E88–0059 (5th Cir.1969), and *Killingsworth v. Enterprise Consolidated School District*, No. 1367(E) (5th Cir.1969), reported as *United States v. Hinds County School Board*, 417 F.2d 852 (5th Cir. 1969), *cert. denied*, 396 U.S. 1032, 90 S.Ct. 612, 24 L.Ed.2d 531 (1970).

Section 1443(2) authorizes removal of any civil action

> [f]or any act under color or authority derived from any law providing for equal rights, or for refusing to do any act on the ground that it would be inconsistent with such law.

The Supreme Court has explained that § 1443(2) "confers a privilege of removal only upon *federal* officers or agents and those authorized to act with or for them in affirmatively executing duties under any federal law providing equal civil rights," *City of Greenwood v. Peacock,* 384 U.S. 808, 86 S.Ct. 1800, 16 L.Ed.2d 944 (1966); *Bell v. Taylor,* 509 F.2d 808 (5th Cir.1975), except that the second phrase of this subsection-"for refusing to do any act on the ground that it would be inconsistent with [any law providing for equal rights]"-also provides a right of removal to state officers and their agents who have been sued for refusing to enforce laws providing for equal rights. *Id.* at 824 n. 22, 86 S.Ct. at 1811 n. 22 (quoting statement of Representative Wilson, as reported in Cong. Globe, 39th Cong., 1st Sess., 1367). ("[T]his amendment is intended to enable State officers, who shall refuse to enforce State laws discriminating in reference to (the rights created by § 1 of the bill) on account of race or color, to remove their cases to the United States courts when prosecuted for refusing to enforce those laws"). The Enterprise District points out that the courts have uniformly held that state officials who carry out a federal court's order (including desegregation orders) "may fairly be said to come within the first phrase of § 1443(2) as persons authorized (ordered) to act for a federal officer (this Court) in affirmatively executing duties under a federal law providing for equal civil rights; and also to come within the second phrase of 1443(2)." *Burns v. Board of School Comm'rs,* 302 F.Supp. 309, 311–12 (S.D.Ind.1969), *aff'd per curiam,* 437 F.2d 1143 (7th Cir.1971); *Bohlander v. Independent Sch. Dist. No. 1,* 420 F.2d 693, 694 (10th Cir.1969).

■ The Enterprise District recognizes that to qualify for "federal officer" removal under § 1443(2), it must raise a colorable federal defense *and* establish that the suit is "for an act under color of office"-meaning it must show that there is a "causal connection" between the charged conduct and its asserted official authority.[2] It insists that both requisites are met, and argues, more specifically, that the Enterprise District is "necessarily an enforcer of the federal desegregation decree" and that

---

2. In *Jefferson County, Alabama v. William M. Acker, Jr.,* 527 U.S. 423, 119 S.Ct. 2069, 144 L.Ed.2d 408 (1999), the Supreme Court construed 28 U.S.C. § 1442, the federal officer removal statute, and particularly subsection (a)(3) of that statute, which the defendant district contends is analogous to § 1443(2). Section 1442(a)(3) states:

> "(a) A civil action or criminal prosecution commenced in a State court against any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
> . . . . .
> (3) Any officer of the courts of the United States, for any act under color of office or in the performance of his duties."

*Id.* at 429, 119 S.Ct. at 2074.

The Court explained that while under the general removal statute, § 1441, the federal question must appear from the complaint, [s]uits against federal officers are exceptional in this regard. Under the federal officer removal statute, suits against federal officers may be removed despite the non-federal cast of the complaint; the federal question element is met if the defense depends on federal law.

*Id.,* 119 S.Ct. at 2075. The Court emphasized, however, that

> [t]o qualify for removal, an officer of the federal courts must both raise a colorable federal defense, *see Mesa v. California,* 489 U.S. 121, 139, 109 S.Ct. 959, 103 L.Ed.2d 99 (1989), and establish that the suit is "for a[n] act under color of office," 28 U.S.C. § 1442(a)(3) (emphasis added). To satisfy the latter requirement, the officer must show a nexus, a " 'causal connection' between the charged conduct and asserted official authority." *Willingham v. Morgan,* 395 U.S. 402, 409, 89 S.Ct. 1813, 23 L.Ed.2d 396 (1969) (quoting *Maryland v. Soper,* 270 U.S. 9, 33, 46 S.Ct. 185, 70 L.Ed. 449 (1926)).

*Id.*

this lawsuit is "inextricably intertwined" with that federal desegregation decree (and enforcement thereof) because it involves a student "assignment" (or attendance) issue. The court is not persuaded.

Assuming that the Enterprise District qualifies as a "federal agent" for purposes of enforcement of the desegregation decree, it has not shown that *in this case,* it is assuming an enforcement role. That is, it has not demonstrated any "causal connection" between this litigation and its authority to enforce the desegregation decree. Essentially, as the court interprets its memorandums, the Enterprise District takes the position that any case which involves any issue touching upon student attendance, transportation, administration or funding of any school under a desegregation order (and thus subject to the continuing jurisdiction of the federal courts) is subject to removal, even when no claim is made-either affirmatively in the complaint or by way of defense-that the desegregation order has been or is in jeopardy of being violated or that there has been any constitutional violation at all. Of course, the court recognizes the Enterprise District's arguments to the effect that the transfer and funding policies of each of these school districts are "inexorably intertwined" with the policies of its neighboring districts, and with their obligations under the desegregation decrees and related rulings and orders, and that therefore, no court can give effective consideration to the issues here involved without interpreting the rights and obligations of each of the districts to the other, in light of the desegregation order. The plain fact is, however, that no effort is being made by the Enterprise District in this litigation to "enforce" or otherwise prevent or seek redress of any violation of the desegregation order or any constitutional violation.

That is to say, so far as the parties' pleadings reveal, no claim is made that there has been any discriminatory conduct by any party or that any party has made decisions which have had or will have an adverse desegregative impact on any other district. Nor is there any claim that a decision by any court respecting whether, and/or on what terms, certain Enterprise students may attend the Vocational Technical Center, and/or respecting whether the Center is a "regional" Center within the contemplation of the applicable state statutes, would adversely effect desegregation in or among the districts.[3] Thus, there is no basis for this court's involvement in the litigation. There is no federal jurisdiction, and the case must therefore be remanded.

Accordingly, and for the foregoing reasons, it is ordered that plaintiffs' motion to remand is granted.

---

**3.** The defendant district has also argued that its defense of claim preclusion, by which it urges that the Quitman District's claim is barred for not having been raised and presented in earlier litigation between the parties relative to their respective desegregation obligations, *see Lauderdale County Sch. Dist. v. Enterprise Consolidated Sch. Dist.,* 24 F.3d 671 (5th Cir.1994), is federal in nature, giving rise to a basis for federal jurisdiction. Even assuming, on the theory that the Enterprise District is a federal officer such that a federal defense would suffice to support federal jurisdiction, the defendant district has offered no authority for its assertion that its claim preclusion defense is necessarily federal.