## STATE OF MARYLAND v. FORD et al.

(District Court, D. Maryland. April 27, 1926.)

**1. Removal of causes** ⬤═▷85½, New, vol. 9A Key-No. Series—**Insufficient disclosure in petitions of federal officers for removal to federal court of prosecution for murder in state court held not to require denial of leave to amend petition (Judicial Code, § 33 [Comp. St. § 1015]).**

Insufficient disclosure in prior petitions of federal revenue agents and prohibition officers, under Judicial Code, § 33 (Comp. St. § 1015), for removal to federal court of prosecution for murder in state court, *held* not to require denial of application for leave to file amended petition, especially where petitioners had fully disclosed facts to state.

**2. Removal of causes** ⬤═▷85½, New, vol. 9A Key-No. Series—**Federal officers' petition for removal to federal court of prosecution for murder in state court held to allege sufficient facts showing prosecution was based on acts in performance of their official duties to entitle them thereto (Judicial Code, § 33 [Comp. St. § 1015]).**

Amended petition of federal revenue agents and prohibition officers under Judicial Code, § 33 (Comp. St. § 1015), for removal to federal court of prosecution for murder in state court, *held* sufficiently to allege facts showing that state prosecution was based on acts of officers committed in performance of their official duties to entitle them to removal.

**3. Removal of causes** ⬤═▷85½, New, vol. 9A Key-No. Series—**Petition of federal officers for removal to federal court of state murder prosecution need not show that homicide was justified (Judicial Code, § 33 [Comp. St. § 1015]).**

Petition of federal revenue agents and prohibition officers under Judicial Code, § 33 (Comp. St. § 1015), for removal to federal court of prosecution for murder in state court, need not show that homicide, if committed by them, was justified under the law, since order of removal does not determine guilt or innocence, but merely that prosecution is based on their official acts.

**4. Removal of causes** ⬤═▷85½, New, vol. 9A Key-No. Series—**Federal officers' petition for removal of state prosecution for murder to federal court need not explain how deceased reached spot in which he was found (Judicial Code, § 33 [Comp. St. § 1015]).**

Petition of federal revenue agents and prohibition officers, under Judicial Code, § 33 (Comp. St. § 1015), for removal to federal court of prosecution for murder in state court, need not explain how deceased reached spot where he was found, where petition alleged that they fired shots while in pursuit of men who were fleeing in opposite direction from such spot.

12 F.(2d)—19

**5. Removal of causes** ⬤═▷85½, New, vol. 9A Key-No. Series—**Federal officers' petition for removal of state murder prosecution to federal court need not admit that one of them shot deceased (Judicial Code, § 33 [Comp. St. § 1015]).**

Petition of federal revenue agents and prohibition officers, under Judicial Code, § 33 (Comp. St. § 1015), for removal to federal court of prosecution for murder in state court, need not demonstrate or admit that one of them shot deceased, but it is enough that their acts or their presence in place in performance of their official duty constitute basis, though mistaken or false, of state prosecution.

Robert D. Ford and others were indicted for murder, and the proceeding was removed from the state to the federal court under the statute. On motion of the State of Maryland to quash the writ of removal and rescind the order of removal. Motion overruled.

Amos W. W. Woodcock, U. S. Atty., of Baltimore, Md., for petitioners.

Thos. H. Robinson, Atty. Gen., of Maryland, and Herbert Levy, Asst. Atty. Gen., of Maryland, for the State of Maryland.

SOPER, District Judge. The defendants were indicted, on November 19, 1924, for the murder of one Lawrence Wenger, by the grand jury of Harford county. The indictment was found on February 10, 1925, whereupon the defendants filed a petition in this court, under section 33 of the Judicial Code (Comp. St. § 1015), for the removal of the case from the circuit court of Harford county to this court, on the ground that the acts upon which the criminal charge was founded were performed by them as federal revenue agents and prohibition officers. The state of Maryland opposed the application, but the petition, after being amended, was granted. Thereupon the state applied to the Supreme Court of the United States for a writ of mandamus, directing this court to remand the case to the state court. The Supreme Court held in State of Maryland v. Soper, 46 S. Ct. 185, 70 L. Ed. ——: (1) That federal prohibition agents are entitled, under section 33 of the Judicial Code, to remove to federal courts state prosecutions, based upon acts done in their official capacity; and (2) that the petition of the defendants did not justify the order of removal, because the facts disclosed did not bring the defendants within the terms of the section. The Supreme Court nevertheless said that, should this court deem it proper, it would be at liberty to allow another amendment to the petition for removal,

by which the necessary averments might be supplied.

[1] Application has been made by the defendants for leave to file an amended petition herein, which has been opposed by the state. It has insisted that the right to amend should be denied, because the amended petition submitted shows that the petitioners were not candid in their former petitions, but avoided a clear explanation of their relation to the transaction covered by the indictment, and deliberately withheld many of the essential facts. Notwithstanding the objection of the state, leave to file the amended petition was granted. It did not appear to the court that the insufficient disclosure of the prior petitions required the refusal of the new request, particularly since the lack of candor in the first application was pointed out in the opinion of the Supreme Court, which nevertheless suggested the propriety of an amendment. Moreover, it appears to the court that the petitioners have heretofore fully disclosed to the state their relation to the transaction.

It is alleged in all of the petitions that have been filed that the petitioners found the wounded man not far from the scene of their operations, and promptly brought him to the authorities of Harford county at · Belair; that they appeared before the coroner's inquest and gave their testimony of the circumstances, which was taken down. It was admitted at the argument that the stenographic report of this testimony is in the possession of the state's attorney, and that a copy thereof has been refused to the United States attorney, representing the petitioners, by the circuit court of Harford county, acting within its discretion under section 177 of article 13 of the Code of Public Local Laws of Maryland, as amended by chapter 198 of the Acts of 1920. The state, therefore, has not been put to any disadvantage by the inadequacy of the prior petitions, but, on the contrary, so far as this court is advised, the state from the beginning has been in possession of a complete narrative of the agents' actions.

The amended petition having been received, the state filed a motion to quash the writ and rescind the order of removal, on the ground that the allegations of the amended petition do not disclose a state of facts entitling the petitioners to the relief prayed. The rules by which the sufficiency of the petition may be determined have been clearly set out in the decision of the Supreme Court:

"The prosecution to be removed under the section must have been instituted 'on account of' acts done by the defendant as a federal officer under color of his office or of the revenue or prohibition law. There must be causal connection between what the officer has done under asserted official authority and the state prosecution. It must appear that the prosecution of him for whatever offense has arisen out of the acts done by him under color of federal authority and in enforcement of federal law, and he must by direct averment exclude the possibility that it was based on acts or conduct of his, not justified by his federal duty. But the statute does not require that the prosecution must be for the very acts which the officer admits to have been done by him under federal authority. It is enough that his acts or his presence at the place in performance of his official duty constitute the basis, though mistaken or false, of the state prosecution."

Applying this rule, the Supreme Court held that the former petition was not sufficiently informing and specific, since the allegations amounted to hardly more than to say that the homicide was committed at a time when the petitioners were engaged in performing their official duties. The court said:

"They do not negative the possibility that they were doing other acts than official acts at the time and on this occasion, or make it clear and specific that whatever was done by them leading to the prosecution was done under color of their federal official duty. They do not allege what was the nature of Wenger's fatal wound, whether gunshot or otherwise, whether they had seen him among those who brought the still and fled, or whether they heard, or took part in any shooting. They do not say what they did, if anything, in pursuit of the fugitives.".

[2] In marked contrast, the allegations of the present amended petition are full, definite, and precise. The petitioners say that on November 19, 1924, acting as federal revenue and prohibition agents, they were investigating the alleged unlawful distillation of intoxicating liquor on the Carver farm, situated about 12 miles from Belair, in Harford county. They reached the premises about 1 p. m., and discovered in a secluded wooded valley and swamp material and equipment for such an operation. They concealed themselves in the woods near the site of the still. Approximately half an hour thereafter, they heard a noise caused by the rolling of the boiler of a still along a path over rocky ground. Barton, who was one of the agents, discovered a man, separated from him by a stream, approaching the site from the north along a path slightly higher than Barton's hiding place. The man was preceded

by a dog. Ford, Trabing, and Ely, three other agents, were concealed on a hillside above the path and across the brook from Barton. Stevens, another agent, was concealed in the woods on the same side as Barton, but farther away. When the approaching man reached a point quite close to the site, the dog discovered Barton and began barking, whereby the man and those who were following with the boiler were warned, and, turning, fled toward the north. The officers gave pursuit, Barton being in the lead.

After running a short distance, he discovered that two men were disappearing into the bushes to the west of the path. They were not seen again. At the same time he discovered a man on the path in front of him, attempting to get through a barbed wire fence. Extricating himself, he fled across an open meadow in a general northerly direction. Barton was unable to overtake him and he escaped. Before the two men disappeared in the bushes, Barton fired his revolver in the air toward the northeast to cause the first man whom he had seen to stop. Later he fired two shots while in the meadow, aiming at the ground, and later one or two more shots in the air in a general northerly direction. None of these shots were aimed at any man, nor did he observe that any man was struck. At all times during the pursuit, Barton was nearer the fugitives than any other agent.

Ford had seen the man approaching the still site along the path, and saw another man disappear in the brush to the west; he also saw the man whom Barton was pursuing over the meadow and through the corn field. Ford also fired his revolver in the air in a general northerly direction, for the purpose of signaling the man whom Barton was pursuing to stop. Later on he fired twice at the dog in the meadow. He did not perceive that any of the shots hit any man, and those that were fired at the dog struck the ground.

Trabing, the chauffeur, joined in the pursuit, but he fired no shots. Ely followed in the pursuit after Ford and Trabing. He fired one shot in the direction of the dog, which struck the ground and did not strike any man. Stevens fired no shots at all. He did not see the man who first approached the still, seeing only the dog, and later the men whom Barton was pursuing. All of the agents, except Barton, are certain that no man whom they saw was Wenger, while Barton is uncertain whether the first man he saw was or was not Wenger. No other shots were fired in the hearing of the agents.

After the unsuccessful pursuit, the agents returned to the site of the still in order to destroy it. Having finished this work, they left the place about 3:30 or 4 o'clock p. m., in order to return to their automobile, which had been left some distance away. They proceeded in a southerly direction substantially opposite to that which the fugitives had taken. When they reached a point about 300 yards south from the still, they discovered Wenger mortally wounded by a bullet. He was then conscious. He was asked who had shot him, and he replied that he was about to die and to leave him alone. He had been shot by a bullet of unknown caliber, which had entered his back and proceeded in an upward diagonal direction through the abdomen, passing out the front of the body. They carried him to Jarrettsville for medical treatment, and later to Belair, where he was pronounced dead. They went to the state's attorney's office and related the above facts to him. They were placed under arrest and confined in the jail until the following morning, when they were taken by the sheriff and state's attorney to the scene of the affair, where they related the facts concerning their investigations. On the afternoon of November 20th, they testified freely, without reservation, at the coroner's inquest.

This recital makes out a cause for removal. It establishes a causal connection between what the officers did under asserted official authority and the state prosecution. It excludes the possibility that the state prosecution was based on acts of the officers outside their official duties. They admit that they fired a number of times while in pursuit of men obviously bent on violating the national prohibition law. The deceased bore some resemblance to one of the fugitives. He was found mortally wounded by a bullet within a fraction of a mile of the place at which he disappeared. During the entire interval between the time the shots were fired and the time he was found, the petitioners were engaged exclusively in the performance of official acts. It thus appears that the defects in the former petition, pointed out by the Supreme Court, have been cured.

[3] The state of Maryland criticizes the new petition substantially on two grounds: (1) That the facts set out do not justify a homicide; and (2) that it is very improbable that the deceased was shot during the pursuit of the men who fled, because they ran in a northerly direction, whereas he was found about 300 yards to the south of the site of the still. In regard to the first point, it may be said that it is not necessary, in order to justify a removal, that the agents show in their pe-

tition that the homicide, if committed by them, was justified under the law. The order of removal does not determine either the guilt or innocence of the accused, but merely that the prosecution is based upon their official acts.

[4, 5] As to the second point, it is true that the petition does not explain how the wounded man reached the spot at which he was found. But the incident is not in itself impossible, and an explanation is not essential to the petitioners' case. Nor is it necessary for the petitioners to demonstrate or admit that one of them shot the deceased. "It is enough that their acts or their presence at the place in performance of their official duty constitute the basis, though mistaken or false, of the state prosecution." Indeed, the state itself seems to recognize that the connection has been established; for, in its answer to the application for leave to file an amended petition, it charges the agents with suppression of the truth in their earlier pleadings, and then says in regard to the amended petition: "After the Supreme Court has pointed out the way to them, they have set up a state of facts which shows that it is very probable that they were responsible for the murder for which they have been indicted, and that the killing was entirely unjustified." This is said of the agents' own story, which declares that all of their actions, whether justified or not, were performed in the scope of their official employment.

The motion to quash the writ of removal will be overruled.