**STATE OF TENNESSEE v. KEENAN.**
No. 4915.

District Court, W. D. Tennessee.
Feb. 25, 1936.

MARTIN, District Judge.

James B. Keenan, an investigator in the Alcohol Tax Unit, Bureau of Internal Revenue, United States Treasury Department, was indicted in the criminal court of Shelby county, Tenn., on February 8, 1935, for the crime of murder of James Cullen Baw. On the same date, he was indicted, also, for the crime of attempt to murder Willie Cigalina.

On September 10, 1935, the said James B. Keenan filed his petition in this court, praying the removal of said criminal prosecution from the criminal court of Shelby county, Tenn., to the District Court of the United States for the Western Division of the Western District of Tennessee; and praying writs of certiorari from this court to the aforesaid state court, transferring and removing said causes in the manner required by law. The petition for removal was sworn to by the petitioning defendant, James B. Keenan, and was signed and certified by Honorable William McClanahan, United States Attorney for the Western District of Tennessee, attorney for petitioner.

The petition averred that the defendant, Keenan, is not guilty of either of the charges laid in the indictments; that, at the time the alleged offenses were committed, the petitioner was an officer of the United States; that the acts of the petitioner, upon which the indictments were returned against him, were done and performed by him under color of his office as an investigator of the Alcohol Tax Unit, Bureau of Internal Revenue, United States Treasury Department; and that, under, and by virtue of section 76, U.S.C.A., title 28, Jud.Code, § 33, as amended, he is entitled to have the criminal prosecution pending against him in the state court removed for trial to this court. Copies of the two aforesaid indictments and an affidavit of petitioner, detailing the occurrences out of which the indictments grew, were exhibited with and made parts of the petition for removal.

This court directed the issuance of writs of certiorari as prayed in the petition.

On November 9, 1935, the District Attorney General for the Fifteenth Judicial Circuit of Tennessee, Honorable W. T. McLain, filed in this court a motion to quash the writs of certiorari, and to rescind the order of removal.

Wm. McClanahan, U. S. Atty., and R. G. Draper and C. P. J. Mooney, Asst. U. S. Attys., all of Memphis, Tenn., for petitioner.

W. T. McLain, Dist. Atty. Gen., of Tennessee, and W. P. Battle, Jr., Asst. Atty. Gen., for the State of Tennessee.

In behalf of the defendant, James B. Keenan, the United States Attorney filed, on December 27, 1935, a reply to the said motion of the state of Tennessee; and, on the same date, the said District Attorney General of the state of Tennessee filed a motion to remand the causes to the state court; the motion embracing also an answer to the original petition.

In open court, on the date set for hearing the motion to remand, the District Attorney General of Tennessee moved for permission to combine the motion to quash with the motion to remand, which was granted.

At the oral hearing on said date, the Assistant United States Attorney presented numerous motions urging that, if the affidavit of the defendant, James B. Keenan, is deemed sufficient in its allegations that he was acting under color of his office or authority, this court must conclude that fact as true and deny the state of Tennessee the right to introduce proof to combat the allegations of the petition.

This court overruled all motions of the United States Attorney which asserted the proposition that the jurisdiction of a sovereign state to try a person indicted for murder may be defeated finally by the mere sworn allegation of the defendant that he was acting under color or authority of his office as an internal revenue agent; and held (1) that the state has the right to challenge the truth and correctness of the allegations of the petition for removal on the motion of the state to remand; (2) that a fact issue is raised, triable on the motion to remand, in the determination of which it is not within the purview of the court to pass upon the question of the guilt or innocence of the accused; but it is the duty of the court to decide the single issue of fact as to whether, or not the defendant, Keenan, at the time he killed Baw and injured Cigalina, was acting under color of his office as a United States revenue agent, or under authority of the laws of the United States in the performance of his official duty; that is to say, whether the acts of the defendant for which he was indicted are proven to fall within the purview of title 28, § 76, U.S.C.A. (Jud.Code, § 33, amended); and (3) that, upon the issue of. fact raised by the state of Tennessee, the burden of proof rests upon the United States to establish the allegations of the removal petition and the accompanying affidavit; but that the duty of going forward with the evidence must be met by the state of Tennessee.

The court then ordered the case to proceed to trial on the motion to remand, permitting testimony to be introduced in open court, both by the District Attorney General of Tennessee and by the United States Attorney, with witnesses subject to cross-examination by the opposing parties.

█ The exercise of the judicial function of the United States to restrain a criminal proceeding in a state court must be supported always by plain warrant of law. The essential preservation of dual sovereignty necessitates the utmost care upon the part of a United States court, in the performance of the delicate duty of deciding an issue of contested jurisdiction between sovereignties. This ever-recognized principle has burdened United States judges from the earliest days of the Republic. The established supremacy of the United States in an appropriate case accentuates rather than softens the responsibility.

Section 33 of the Judicial Code (title 28, § 76, U.S.C.A.), under which this proceeding has been removed to this court, provides: "When any civil suit or criminal prosecution is commenced in any court of a State against any officer appointed under or acting by authority of any revenue law of the United States, or against any person acting under or by authority of any such officer, on account of any act done under color of his office or of any such law, or on account of any right, title, or authority claimed by such officer or other person under any such law * * * the said suit or prosecution may at any time before the trial or final hearing thereof be removed for trial into the district court next to be holden in the district where the same is pending upon the petition of such defendant to said district court and in the following manner," etc.

The constitutionality of the original act, Revised Statutes, § 643; Act March 3, 1875, c. 130, § 8, 18 Stat. 401 (subsequently enlarged by successive amendments), was upheld in Tennessee v. Davis (1879) 100 U. S. 257, 261, 262, 263, 265, 266, 267, 25 L.Ed. 648. The Supreme Court said:

"The Act of Congress authorizes the removal of any cause, when the acts of the defendant complained of were done, or claimed to have been done, in the discharge of his duty as a federal officer. It makes such a claim a basis for the as-

sumption of federal jurisdiction of the case, and for retaining it, at least until the claim proves unfounded.

"That the Act of Congress does provide for the removal of criminal prosecutions for offenses against the state laws, when there arises in them the claim of the federal right or authority, is too plain to admit of denial. Such is its positive language, and it is not to be argued away by presenting the supposed incongruity of administering state criminal laws by other courts than those established by the State. * * *

"The United States is a government with authority extending over the whole territory of the Union, acting upon the States and upon the People of the States. While it is limited in the number of its powers, so far as its sovereignty extends it is supreme. No State Government can exclude it from the exercise of any authority conferred upon it by the Constitution, obstruct its authorized officers against its will, or withhold from it, for a moment, the cognizance of any subject which that instrument has committed to it. * * *

"The judicial power is declared [in the constitution] to extend to all cases of the character described, making no distinction between civil and criminal, and the reasons for conferring upon the Courts of the National Government superior jurisdiction over cases involving authority and rights under the laws of the United States, are equally applicable to both. * * *

"If, whenever and wherever a case arises under the Constitution and laws or treaties of the United States, the National Government cannot take control of it, whether it be civil or criminal, in any stage of its progress, its judicial power is, at least, temporarily silenced, instead of being at all times supreme. * * *

"The removal of cases arising under those laws, from State into Federal courts, is, therefore, no invasion of state domain. On the contrary, a denial of the right of the General Government to remove them, to take charge of and try any case arising under the Constitution or laws of the United States, is a denial of the conceded sovereignty of that government over a subject expressly committed to it."

In answering the question of procedural difficulties in removal cases, the court said (100 U.S. 257, 271, 25 L.Ed. 648): "While it is true there is neither in section 643 nor in the Act of which it is a re-

enactment, any mode of procedure in the trial of a removed case prescribed, except that it is ordered, the cause when removed shall proceed as a cause originally commenced in that court, yet the mode of trial is sufficiently obvious. The Circuit Courts of the United States have all the appliances which are needed for the trial of any criminal case. They adopt and apply the laws of the State in civil cases, and there is no more difficulty in administering the state's criminal law. They are not foreign courts. The Constitution has made them courts within the States to administer the laws of the States in certain cases; and, so long as they keep within the jurisdiction assigned to them, their general powers are adequate to the trial of any case. The supposed anomaly of prosecuting offenders against the peace and dignity of a State, in tribunals of the General Government, grows entirely out of the division of powers between that government and the government of a State; that is, a division of sovereignty over certain matters. When this is understood, and it is time it should be, it will not appear strange that, even in cases of criminal prosecutions for alleged offenses against a State, in which arises a defense under United States law, the General Government should take cognizance of the case and try it in its courts, according to its own forms of proceeding."

There has been steadfast adherence to the principles declared in Tennessee v. Davis, supra, in the United States courts. The divergence in judicial decisions has been upon the applicability of section 33 of the Judicial Code to specific cases, and upon procedural matters.

In the case at bar, the controversy is typical of varying points of view. The state of Tennessee challenges the sufficiency of the petition for removal, denies the truth of its averments, and claims the right, on motion to remand, to introduce proof upon the fact issue of jurisdiction. The government asserts that the petition is sufficient, that the jurisdiction of the federal court rests and depends entirely upon the statements in the petition for removal, verified by the oath of the petitioner, and that the federal court should not consider proof aliunde on the motion to remand.

 This court held that, while the petition is sufficient on its face to warrant removal, the state has the right, on its motion to remand, to challenge the truth of the averments of the petition by the intro-

duction of testimony upon the trial of the issue of fact, as to whether the defendant's acts, for which he has been indicted, were done under color of his office or under authority of the laws of the United States in the performance of his official duties.

In reaching this conclusion, the court has been guided by conceptions of substantial justice to be administered in a controversy between sovereignties, and by interpretation of Supreme Court decisions.

Were the state denied the right to challenge, by proof, the truth of the petition for removal, a government revenue officer, by false swearing, could defeat the power of a sovereign state to bring him to its own bar of justice on a charge of murder. Any government official within the class described in the statute could, by perjury, render himself immune from trial in a state court.

Clearly, the statute should not be construed to the absurdity of permitting a person accused of crime to pick, by falsification, the tribunal which he prefers to face on the trial of a substantive offense. Such result would follow, unless the District Court of the United States should entertain proof on the issue of jurisdictional fact raised by the state on its motion to remand.

A careful consideration of the decisions of the Supreme Court of the United States supports the deduction that the court assumed, as understood, the interpretation here placed upon section 33 of the Judicial Code (title 28, § 76, U.S.C.A.).

This is apparent from a recent opinion, Colorado v. Symes, Judge, 286 U.S. 510, 52 S.Ct. 635, 76 L.Ed. 1253, decided May 31, 1932, in which the Supreme Court held that while the removal act, Judicial Code, § 33 (title 28, § 76, U.S.C.A.), should be construed liberally to effect its purpose of maintaining the supremacy of the federal laws, it must. also be construed with the highest regard for the right of the states to make and enforce their own laws in the field belonging to them under the Constitution. At page 515 of 286 U.S., 52 S.Ct. 635, 636, 76 L.Ed. 1253, it is said: "As the prosecuting attorney did not join issue with any of the allegations of the petition for removal, the jurisdiction of the federal court and the validity of its actions are to be determined upon the allegations of the petition."

And in the concluding paragraph of the opinion, 286 U.S., 510, at page 521, 52 S.Ct. 635, 638, 76 L.Ed. 1253, the court said: "The district judge, should he deem it proper so to do, may permit the accused by amendment to his petition and additional evidence or otherwise to show that he is entitled to removal authorized by section 33."

The earlier case, Maryland v. Soper, Judge, 270 U.S. 9, 34, 46 S.Ct. 185, 191, 70 L.Ed. 449, is not inconsistent with the latest case, just cited. Chief Justice Taft, delivering the opinion, said: "In invoking the protection of a trial of a state offense in a federal court under section 33, a federal officer abandons his right to refuse to testify because accused of crime, at least to the extent of disclosing in his application for removal all the circumstances known to him out of which the prosecution arose. The defense he is to make is that of his immunity from punishment by the state, because what he did was justified by his duty under the federal law, and because he did nothing else on which the prosecution could be based. He must establish fully and fairly this defense by the allegations of his petition for removal before the federal court can properly grant it. It is incumbent on him, conformably to the rules of good pleading, to make the case on which he relies, so that the court may be fully advised and the state may take issue by a motion to remand."

The Chief Justice cited Chesapeake & Ohio R. Co. v. Cockrell, 232 U.S. 146, 151, 152, 34 S.Ct. 278, 279, 58 L.Ed. 544, in which the court said: "The right of removal from a state to a Federal court, as is well understood, exists only in certain enumerated classes of cases. To the exercise of the right, therefore, it is essential that the case be shown to be within one of those classes; and this must be done by a verified petition setting forth, agreeably to the ordinary rules of pleading, the particular facts, not already appearing, out of which the right arises. It is not enough to allege in terms that the case is removable or belongs to one of the enumerated classes, or otherwise to rest the right upon mere legal conclusions. As in other pleadings, there must be a statement of the facts relied upon, and not otherwise appearing, in order that the court may draw the proper conclusion from all the facts, and that, in the event of a removal, the opposing party may take issue, by a motion to remand, with what is alleged in the petition. Little York Gold Washing & Water Co. v. Keyes, 96 U.S. 199, 202, 24 L.Ed. 656, 658; Car-

son v. Dunham, 121 U.S. 421, 426, 7 S.Ct. 1030, 30 L.Ed. 992, 993; Crehore v. Ohio & Mississippi R. Co., 131 U.S. 240, 244, 9 S. Ct. 692, 33 L.Ed. 144, 145; Powers v. Chesapeake & Ohio R. Co., 169 U.S. 92, 101, 18 S.Ct. 264, 42 L.Ed. 673, 676."

The distinction that the allegations of the petition for removal are binding upon the state court, but not upon the federal court, is pointed out at page 154 of 232 U.S., 34 S.Ct. 278, 281, 58 L.Ed. 544: "That court [the Court of Appeals of Kentucky], apparently assuming that the petition for removal contained a sufficient showing of a fraudulent joinder, held that the questions of fact arising upon the petition were open to examination and determination in the state court, and that no error was committed in refusing to surrender jurisdiction, because, upon the subsequent trial, the evidence indicated that the showing in the petition was not true as to the fireman. In so holding the Court of Appeals fell into manifest error, for it is thoroughly settled that issues of fact arising upon a petition for removal are to be determined in the Federal court, and that the state court, for the purpose of determining for itself whether it will surrender jurisdiction, must accept as true the allegations of fact in such petition. [Citing cases.]"

It would seem that, even in the much earlier case of Tennessee v. Davis, 100 U. S. 257, 261, 262, 25 L.Ed. 648, supra, the right to try in the federal court the fact issue raised by petition of removal was assumed; for the court said: "But the Act of Congress authorizes the removal of any cause, when the acts of the defendant complained of were done, or claimed to have been done, in the discharge of his duty as a federal officer. It makes such a claim a basis for the assumption of federal jurisdiction of the case, and for retaining it, at least until the claim proves unfounded."

In Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97, 98, 42 S.Ct. 35, 37, 66 L. Ed. 144, Mr. Justice Van Devanter, in delivering the unanimous opinion of the court, said: "If a removal is effected, the plaintiff may, by a motion to remand, plea, or answer, take issue with the statements in the petition. If he does, the issues so arising must be heard and determined by the District Court (Stone v. South Carolina, 117 U.S. 430, 432, 6 S.Ct. 799, 29 L. Ed. 962; Chicago, Rock Island & Pacific Ry. Co. v. Dowell, 229 U.S. 102, 113, 33 S.

Ct. 684, 57 L.Ed. 1090; Chesapeake & Ohio Ry. Co. v. Cockrell, supra, 232 U.S. 146, 152, 154, 34 S.Ct. 278, 58 L.Ed. 544), and at the hearing the petitioning defendant must take and carry the burden of proof, he being the actor in the removal proceeding (Carson v. Dunham, 121 U.S. 421, 425, 426, 7 S.Ct. 1030, 30 L.Ed. 992). But if the plaintiff does not take issue with what is stated in the petition, he must be taken as assenting to its truth, and the petitioning defendant need not produce any proof to sustain it. Kentucky v. Powers, 201 U.S. 1, 33, 34, 35, 26 S.Ct. 387, 50 L.Ed. 633, 5 Ann.Cas. 692."

The foregoing opinion seems abundant controlling authority for the correctness of the procedure ordered by this court on the hearing of the motion to remand, especially with respect to the burden of proof. The decisions of the United States Supreme Court discussed, supra, make it unnecessary to review elaborately other federal authorities. Suffice it to cite, in apparent accord with this opinion as to the duty of a federal District Court to hear proof upon the issue of jurisdictional fact when the averments of the petition for removal are challenged by the state: In re Duane (D.C. Mass.1919) 261 F. 242, 243; Virginia v. Felts (C.C.W.D.Va.1904) 133 F. 85, 89; State of Rhode Island v. Richardson (D.C. R.I.1929) 32 F.(2d) 301.

It has been insistently urged by the District Attorney General of Tennessee that the petition for removal with accompanying affidavit in this case is insufficient on its face to warrant the retention of jurisdiction by this United States District Court. The authorities upon this proposition should, therefore, be carefully examined, to ascertain whether the removal petition in this case meets the required standard.

In Colorado v. Symes, 286 U.S. 510, 518, 519, 520, 52 S.Ct. 635, 637, 76 L.Ed. 1253, Mr. Justice Butler, in delivering the opinion of the court, said:

"The burden is upon him who claims the removal plainly to set forth by petition made, signed and unequivocally verified by himself all the facts relating to the occurrence, as he claims them to be, on which the accusation is based. Without such disclosure the court cannot determine whether he is entitled to the immunity. No question of guilt or innocence arises and no determination of fact is required but it

must fairly appear from the showing made that petitioner's claim is not without foundation and is made in good faith.

"As said by Chief Justice Taft speaking for the court in Maryland v. Soper, supra, 270 U.S. 9, 33, 46 S.Ct. 185, 190, 70 L.Ed. 449: 'It must appear that the prosecution * * * has arisen out of the acts done by him under color of federal authority and in enforcement of federal law, and he must by direct averment exclude the possibility that it was based on acts or conduct of his, not justified by his federal duty. * * * (Page 34 of 270 U.S., 46 S.Ct. 185, 191, 70 L.Ed. 449.) In invoking the protection of a trial of a state offense in a federal court under section 33, a federal officer abandons his right to refuse to testify because accused of crime, at least to the extent of disclosing in his application for removal all the circumstances known to him out of which the prosecution arose. The defense he is to make is that of his immunity from punishment by the state, because what he did was justified by his duty under the federal law, and because he did nothing else on which the prosecution could be based. He must establish fully and fairly this defense by the allegations of his petition for removal before the federal court can properly grant it. It is incumbent on him, conformably to the rules of good pleading, to make the case on which he relies, so that the court may be fully advised and the state may take issue on a motion to remand.' And the opinion pointed out (page 35 of 270 U.S., 46 S.Ct. 185, 191, 70 L.Ed. 449) that the allegations of the petition for removal there under consideration did not negative the possibility that the accused were doing other than official acts at the time or on the occasion of the alleged murder or 'make it clear and specific that whatever was done by them leading to the prosecution was done under color of their federal official duty * * * In order to justify so exceptional a procedure, the person seeking the benefit of it should be candid, specific and positive in explaining his relation to the transaction growing out of which he has been indicted, and in showing that his relation to it was confined to his acts as an officer.'

"It appears from a mere inspection of the petition before us that it does not measure up to the required standard."

Likewise, in Maryland v. Soper, supra, the Supreme Court held that the averments of the petition for removal did not fulfill the requirements. Among illuminative opinions of the United States District Courts upon the sufficiency of the allegations of a removal petition under section 33 of the Judicial Code (title 28, § 76, U. S.C.A.), are Alabama v. Peak (D.C.Ala. 1918) 252 F. 306; Oregon v. Wood (D.C. Or.1920) 268 F. 975; State of Rhode Island v. Richardson (D.C.R.I.1929) 32 F.(2d) 301; Virginia v. De Hart (C.C.W.D.Va. Dec.1902) 119 F. 626; Ex parte Dierks (D. C.Colo.1932) 55 F.(2d) 371; State of Maryland v. Ford (D.C.1926) 12 F.(2d) 289; Virginia v. Paul (Va.1893) 148 U.S. 107, 13 S.Ct. 536, 37 L.Ed. 386.

In the instant case, the petitioning defendant, James B. Keenan, is much more candid, specific, and positive in his averments than were the petitioners in either Colorado v. Symes, supra, or Maryland v. Soper, supra.

His petition for removal alleges that, at the time of the occurrences for which he was indicted in the state court, he "was an officer of the United States, appointed under and acting by authority of the Revenue Laws of the United States," and that he was "an investigator in the Alcohol Tax Unit, Bureau of Internal Revenue, United States Treasury Department." His petition avers that "the acts or alleged acts of this petitioner which are the basis of the indictments returned against him, as aforesaid, were done and performed under color of his office as an investigator of the Alcohol Tax Unit, Bureau of Internal Revenue, United States Treasury Department, and in the performance of his duties as such officer of the United States of America; that he went to the scene of the occurrence on which said indictments are based exclusively in his official capacity aforesaid, and in the discharge of his duties as an employee and officer of the United States aforesaid; and that all the things done and performed by him at said time and place were in the necessary and proper discharge of his duties as such officer of the United States, and that all of the details of the said occurrence are fully, truthfully and accurately described by this petitioner in his affidavit attached hereto, being Exhibit No. 3, as fully as is within the knowledge of this petitioner."

In appropriate form, the petitioner prayed the removal of the criminal prosecutions from the criminal court of Shelby county, Tenn., to this District Court. True copies of the indictments were filed as Ex-

hibits 1 and 2 to the petition, and Exhibit No. 3, consisting of his affidavit, set forth a copy of his commission which was effective at the time of the occurrences for which he was indicted. Only so much of the substance of the affidavit of petitioner as is deemed salient to the determination of its sufficiency will be reviewed.

Arising early on the morning of January 11, 1935, the petitioning defendant, Keenan, began the performance of his official duties in Arkansas. Among other activities, he had been engaged in an investigation of Gaston Whitmore, a notorious bootlegger in Eastern Arkansas, and his employee, Jack Butler, a notorious liquor runner, "known to be a very dangerous negro" who "carried a shot gun in his car with him at all times."

In the afternoon about 4:45 o'clock, the defendant, Keenan, left Forrest City, Ark., by automobile, to continue his investigation. He states that, "After leaving Forrest City I decided first to cruise south on No. 3 Highway and endeavor to detect the movements of Gaston Whitmore or the negro, Jack Butler * * * Not seeing anything of Whitmore or the negro, Jack Butler, I returned to LeHi and again turned south on No. 3 Highway and had gone about two miles when I met a Chevrolet car driven by a man who, I was positive in my opinion, was Jack Butler (whom he knew by sight). He was coming from the direction in which I had information that Whitmore was operating a distillery. I drove a short way down the road, turned my car around, and followed him toward LeHi. When he reached LeHi, he turned to the right on No. 70 Highway toward West Memphis, Arkansas. On reaching West Memphis, he drove through town and continued on across the Mississippi River Bridge to Memphis, Tennessee. My purpose in following Butler was to apprehend him in the unlawful transportation of untax-paid liquor regardless of his destination, because I had been instructed by my superior officer, the investigator in charge of the Alcohol Tax Unit at Little Rock, Arkansas, to apprehend Whitmore or the negro Butler and to make every effort possible to do so, and this was my sole purpose on this occasion."

Obedient to his instructions, he followed the supposed Butler across the bridge over the Mississippi river into Memphis, Tenn. He says: "Butler drove through Memphis and out North Second Street Road crossing Wolf River, and continued to the vicinity near Tourist Inn (scene of the subsequent killing) on Highway No. 51. I lost sight of his car at this point, due either to the driver's turning off the lights or turning off to the left of the highway."

Describing, in detail, his movements in his effort to pick up the trail of Butler again and believing that the negro, Butler, was making a delivery of untax-paid liquor to Tourist Inn, the defendant, Keenan, decided to enter to see if this negro had gone inside. He placed his revolver in his belt as he walked in.

He narrates: "The place was dimly lighted on the inside and obviously a bootleg establishment as a bar was situated in the center of the building at the rear. Tables with chairs were on either side of the passageway from the door to the bar. Two men were seated at a table to the right of the door as I entered; a woman was standing at this table. A large, dark complexioned, heavily built man was seated near a stove on the left of the entrance and a woman was standing near him. Two men were behind the bar and a medium sized dark complexioned man was in front of the bar and approximately fifteen feet from the door and was facing me. While walking toward the bar and him he said to me 'What are you doing with that gun and who are you?' At this time my gun was in my belt. I said, 'Don't worry about my gun, I am a federal officer.' As soon as I said that he turned and started hurriedly toward the door which was to the right of the bar as you enter from the front. I continued toward the bar watching him and was within five or six feet of it when I was struck from behind with a club or other instrument, and with the exception of having a faint recollection of several people being around me and beating me, I do not recall anything that happened thereafter and until the following morning when I recovered consciousness in St. Joseph's Hospital, Memphis, Tennessee."

The defendant then describes the severe injuries which were inflicted upon him and says, "I am unable to state definitely of my own knowledge just what happened in the place after I was assaulted. I have, however, made an investigation of this occurrence and upon the information that I have been able to secure and which I have every reason to believe to be true, I hereby represent to the court that the severe head injuries sustained by me were inflicted

upon me immediately after my entry into the building and after I had stated that I was a federal officer, by one of the operators of the bootlegging establishment; namely, Willie Cigalina; that immediately after receiving the blow over the head from this man Cigalina, in instinctive self defense to prevent the continuance of this assault upon me I fired one shot from my revolver which struck this man in the shoulder; that about this time another one of the operators of the establishment, namely James Cullen Baw, attempted to shoot me with a loaded shotgun and in the course of the difficulty in which as stated above I was being attacked by both Cigalina and Baw, in instinctive self defense against this man with the shot gun, and in order to save my own life I fired two or three shots from my revolver from which Baw received wounds which later according to the information furnished me caused his death." He then states his belief that he would undoubtedly have been killed by the man with the shotgun, who was in the very act of firing at him when his own revolver was fired, had his own action been other than that related.

In the judgment of this court, the foregoing petition of the defendant, Keenan, fully and fairly justifies his application for removal of the trial of this cause to the federal court. It negatives the possibility that the accused was engaged in other than official acts at the time of the alleged murder and the alleged assault to murder. The statements of petitioner seem as candid, specific, and positive as his knowledge of the occurrences could reveal. It is, therefore, the judgment of this court that the allegations of the petition are conformable to appropriate removal under section 33 of the Judicial Code (title 28, § 76, U.S.C.A.).

There remains only the consideration of whether or not the testimony adduced at the hearing of oral proof on the motion to remand has contradicted the allegations of the petitioner that he was acting under authority of the Revenue Laws of the United States, or under color of his office, at the time of the deeds for which he has been indicted. It is the judgment of the court that the petitioning defendant, James B. Keenan, has established, on this fact issue, his right to removal.

The decision of the issue presented on the motion to remand does not turn upon the question of the guilt or innocence of the defendant of the crimes charged. Wherefore, the oral testimony given at the hearing will not be reviewed in this opinion; for the reason that the defendant must stand here for trial upon the substantive offenses laid against him in the indictments by the state of Tennessee. Upon the fact issue involved in this motion to remand, it is sufficient to comment that the defendant is corroborated by reputable witnesses upon substantial facts supporting the averments of his petition and his own consistent testimony that he was engaged in the performance of his official duties at the time of the occurrences at Tourist Inn, for which he has been indicted. Rigid cross-examination failed to impeach or even shake the statements of petitioner, to this effect.

It follows that the motion to remand is denied; and this court will retain jurisdiction for the trial of the indictments.